IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Pennsylvania National Mutual Casualty Insurance Company,<br>　　　　Petitioner<br><br>v.<br><br>Everest Reinsurance Company,<br>f/k/a Prudential Reinsurance Company<br>　　　　Respondent. | No. 1:18-mc-00653-SHR |

**PENNSYLVANIA NATIONAL MUTUAL CASUALTY
INSURANCE COMPANY'S
<u>STATEMENT OF JUSTIFICATION FOR SEALING ORDER</u>**

Petitioner, Pennsylvania National Mutual Casualty Insurance Company ("Penn National"), hereby submits this Statement of Justification in support of its Motion to Seal Confidential Documents pursuant to LR 5.8 and LCrR 49 and states as follows[1].

　　1.　　Penn National and Everest Reinsurance Company f/k/a Prudential Reinsurance Company ("Everest") are parties to multiple reinsurance agreements containing an arbitration provision (collectively, "Treaties"). A representative

---

[1] The statements of fact come from Penn National's Verified Petition to Compel Arbitration.

220538261

sample of the Treaties, the Second Excess Layer from 1991, is Exhibit B to Penn National's Petition to Compel Arbitration and the subject of the Motion to Seal.

2. A dispute has arisen between Penn National and Everest regarding billings under the Treaties.

3. The Treaties contain an arbitration provision that requires all disputes arising out of or relating to the Treaties to be submitted to arbitration.

4. Penn National has attempted to submit the dispute to arbitration and demanded arbitration on May 16, 2018 ("Arbitration Demand"). The Arbitration Demand is Exhibit A to the Motion to Compel Arbitration and is also subject to the Motion to Seal.

5. Everest has refused to participate in umpire selection as required by the arbitration provisions in the Treaties. (See Exhibit B at ¶ 26(C).)

6. Instead, Everest has sought to require the present dispute to be heard by individuals from an arbitration panel that was convened to decide a dispute between Penn National and another reinsurer ("Former Panel"). Everest was not a party to and did not participate in this earlier arbitration. Neither Penn National's claims against Everest nor Everest's defenses to Penn National's claims were presented to the Former Panel. Accordingly, the Former Panel never had jurisdiction of Penn National's claims against Everest. In any event, the Former Panel has now disbanded, and the parties have subsequently resolved their dispute

by confidential settlement. Accordingly, the Former Panel no longer has authority to act in any capacity, let alone on a request from a non-party to the arbitration it presided over.

7. As part of the arbitration process, the Former Panel entered a stipulated Confidentiality Agreement and Protective Order governing the proceedings. (A true and correct copy of the Confidentiality Agreement and Protective Order is attached hereto as Exhibit 1.)

8. Pursuant to the terms of the Confidentiality Agreement and Protective Order "all briefs, depositions and hearing transcripts generated in the course of this arbitration, documents created for the arbitration or produced in the proceedings by the opposing party or third-parties, final award and any interim decisions, correspondence, oral discussions and information exchanged in connection with the proceedings" are defined as Arbitration Information and are to be kept confidential and not disclosed. (Exhibit 1 at ¶ 2.)

9. Exhibit 1 is based on the standard form confidentiality agreement used by ARIAS and is standard in reinsurance arbitrations. See, *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 592 F. Supp. 2d 825 (E.D. Pa. 2009).

10. The arbitration between Penn National and Everest will contain a similar confidentiality agreement once a panel is fully constituted to hear that dispute.

11. Everest's refusal to participate in selecting an arbitration panel based on its assertion that the Former Panel should consider the present dispute will necessarily require some confidential Arbitration Information relating to the prior arbitration be presented to the Court in this matter.

12. The Treaties and Arbitration Demand in the present dispute would be Arbitration Information under the standard form of Confidentiality Agreement and Protective Order and thus subject to the terms of such an order, once entered in the present arbitration. (See Exhibit 1 at ¶ 2.)

13. Both the Treaties and the Arbitration Demand contain sensitive and proprietary information regarding the nature and structure of the parties' business relationship.

14. The *Century* case involved an agreed upon confidentiality agreement with identical operative language. *Id.* at 826.

15. The Court in Century outlined the law regarding sealing of court records.

> The strong common law presumption of public access to judicial records is not absolute. *In re Cendant Corp.,* 260 F.3d 183, 194 (3d Cir.2001). However, this presumption is rebutted only when a court is satisfied, after balancing the competing interests, that the need for secrecy outweighs the presumption of access. *Id.* The party seeking to have the record sealed "bears the burden of showing that the material is the kind of information that courts will protect" and that "disclosure will work a clearly defined and serious injury to the party seeking closure." *Id.* (quoting *Miller v. Ind. Hosp.,* 16 F.3d 549, 551 (3d Cir.1994)).

220538261

*Id.* at 827.

16. The sealing of judicial records is within the sound discretion of the court. *Id.* citing *Doe v. C.A.R.S. Protection Plus, Inc.,* 527 F.3d 358, 371 (3d Cir.2008).

17. Courts utilize a multi-step balancing test in determining whether or not it is appropriate to seal documents.

> These factors include:
>
> (1) whether disclosure will violate any privacy interests;
>
> (2) whether the information is being sought for a legitimate purpose or for an improper purpose;
>
> (3) whether disclosure of the information will cause a party embarrassment;
>
> (4) whether confidentiality is being sought over information important to public health and safety;
>
> (5) whether the sharing of information among litigants will promote fairness and efficiency;
>
> (6) whether a party benefitting from the order of confidentiality is a public entity or official; and
>
> (7) whether the case involves issues important to the public.

*Id.* at 827-8 citing *Shingara v. Skiles,* 420 F.3d 301, 306 (3d Cir.2005).

18. In granting the motion to seal the Court explained its reasoning as follows:

220538261

> The Court will consider the aforementioned factors *ad seriatim*. First, there is a significant "business" privacy interest that would affect Defendant if the Award is disclosed. Second, the purpose behind sealing the Award is legitimate. The parties entered into a Confidentiality Agreement and it is the practice in the reinsurance industry to keep arbitration proceedings, including final awards, confidential. Third, public health and safety issues are not implicated here. Fourth, upholding the terms of the Confidentiality Agreement will promote the voluntary execution of private arbitration agreements; a sound public policy objective. Fifth, neither party is a public entity or official.

*Id.* at 828.

19. The Court's reasoning in *Century* is equally applicable here as this is a purely private business dispute where the parties will be agreeing to confidentiality as is customary in the reinsurance industry and no public officials, entities or issues are involved.

20. The only difference in the present case is that Penn National is before the Court to Compel Arbitration rather than confirm an award.

21. However, the public interest in this case is limited, as the only reason these documents are being submitted is to establish Penn National's right to compel arbitration. The details of the agreements and the Arbitration Demand dealing with the business relationship of the parties has no bearing on whether or not arbitration is appropriate and must be compelled. The Court will not be ruling on the merits of the dispute and if the requested relief is granted the parties will proceed with private arbitration subject to a confidentiality and protective order.

WHEREFORE, Petitioner Pennsylvania National Mutual Casualty Insurance Company respectfully requests that this Court grant the Motion to Seal Confidential Documents and for such other relief as the Court deems appropriate.

Dated: November 13, 2018

Respectfully Submitted,

CLARK HILL PLC

_____
Robert W. Tomilson, Esq. (PA ID 204644)
Joseph M. Donley (Pa ID 23058)
One Commerce Square
2005 Market Street
Philadelphia, PA 19103
215 640 8500
rtomilson@clarkhill.com

*Counsel for Petitioner, Pennsylvania National Mutual Casualty Insurance Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY,<br><br>Petitioner,<br><br>vs.<br><br>EVEREST REINSURANCE COMPANY, f/k/a Prudential Reinsurance Company<br><br>Respondent. | Case No. 1:18-mc-00653-SHR |

# Exhibit 1 to Statement of Justification for Sealing Order

# Filed Under Seal

220556669

In the Matter of the Arbitration Between

NEW ENGLAND REINSURANCE CORPORATION and
HARTFORD FIRE INSURANCE COMPANY

        Petitioners,
- and -

PENNSYLVANIA NATIONAL MUTUAL
CASUALTY INSURANCE COMPANY,

        Respondent and Counter-Petitioner.

Panel Members:

Dan Schmidt, IV, Umpire
Howard Denbin, for Petitioners
Spiro Bantis, for Respondent

# CONFIDENTIALITY AGREEMENT

1. The parties intending to be bound by this agreement are:

    a. New England Reinsurance Corporation and Hartford Fire Insurance Company (collectively "Hartford") and their parent corporation, subsidiaries, affiliates, agents, employees, officers and directors.

    b. Pennsylvania National Mutual Casualty Insurance Company ("Penn National") and its parent corporation, subsidiaries, affiliates, agents, employees, officers and directors.

2. Except as provided in Paragraph 3 below, and absent written agreement between the parties to the contrary, Hartford and Penn National agree that all briefs, depositions and hearing transcripts generated in the course of this arbitration, documents created for the arbitration or produced in the proceedings by the opposing party or third-parties, final award and any interim decisions, correspondence, oral discussions and information exchanged in connection with the proceedings (hereinafter collectively referred to as "Arbitration Information") will be kept confidential. This Confidentiality Agreement will remain in effect even after conclusion of the arbitration proceedings.

3. Disclosure of Arbitration Information may be made: (a) to the extent necessary to obtain compliance with any interim decisions or the final award herein, or to secure payment from retrocessionaires; (b) in connection with court proceedings relating to any aspect of the arbitration, including but not limited to motions to confirm, modify or vacate an arbitration award; (c) as is necessary in communications with auditors retained by any party, or federal or state regulators; (d) as is necessary to comply with subpoenas, discovery requests or orders of any court; and (e) to the extent Arbitration Information is already lawfully in the public domain. Any disclosures pursuant to subparagraphs (a) or (c) shall be accompanied by a copy of this Confidentiality Agreement and an instruction to any recipient to maintain the confidentiality of all Arbitration Information. In connection with any disclosures pursuant to subparagraph (b), the parties agree, subject to court approval, that all submissions of Arbitration Information to a court shall be sealed. If any party is

requested or required under subparagraph (d) to disclose Arbitration Information, subject to any applicable legal restrictions, that party will give written notice to the other(s) as soon as possible after the subpoena, discovery request or court order is received. In all contexts, all parties will make good-faith efforts to limit the extent of the disclosures, if any, to be made, and will cooperate with each other in resisting or limiting disclosure of Arbitration Information.

4. For the purpose of conducting this arbitration, Arbitration Information may be disclosed as needed or appropriate to the following persons only:

    a. the arbitration panel, who evidence by their execution hereof their undertaking to maintain Arbitration Information in confidence as set forth herein;

    b . counsel for a party or employees of counsel's law firm who are assisting counsel;

    c. employees and agents of the parties for purposes consistent with this agreement;

    d. any party's deposition or trial witness;

    e. any person retained by counsel for a party to assist in this arbitration; provided, however, that such person shall agree to be bound by the terms of this Confidentiality Agreement as if that person were a party, and shall so acknowledge by executing, prior to receipt of or access to Arbitration Information, an affidavit in the form attached hereto as Exhibit A; or

    f. any non-party deposition or trial witness; provided, however, that such person shall agree to be bound by the terms of this Confidentiality Agreement as if that person were a party, and shall so acknowledge by executing, prior to receipt of or access to Arbitration Information, an affidavit in the form attached hereto as Exhibit A.

5. If a party is requested or required to disclose Arbitration Information, subject to applicable legal restrictions, that Party will: 1) notify the other party(ies) in writing as soon as possible after the subpoena, request or court order is received, to permit the other party(ies) to seek legal protection against any such disclosure; and 2) tender the defense of that demand to the party that produced the Arbitration Information, or permit that party to associate in the defense of that demand. Unless the demand has been timely limited, quashed or extended, the obligated party will thereafter be entitled to comply with such demand, request or court order to the extent required by law. If requested by any other party(ies), the obligated party will cooperate (at the expense of the requesting other party(ies)) in the defense of a demand.

6. The parties recognize that serious injury could result to any party and its business if the other party breaches its obligations under this Agreement. Therefore, each party agrees that all parties will be entitled to seek a restraining order, injunction or other equitable relief if another party breaches its obligations under this Agreement, in addition to any other remedies and damages that would be available at law or equity.

Members of the Panel:

Spiro Bantis
Howard Denbin
Dan Schmidt, IV

AGREED:

Arbitrator: _____

Arbitrator: _____

Umpire: _____

AGREED:

_____ for Hartford

_____ for Penn National

Dated: March 3, 2016

# EXHIBIT A

In the Matter of the Arbitration Between

_____

NEW ENGLAND REINSURANCE CORPORATION and
HARTFORD FIRE INSURANCE COMPANY

              Petitioners,
- and -

PENNSYLVANIA NATIONAL MUTUAL
CASUALTY INSURANCE COMPANY,

            Respondent and Counter-Petitioner.

_____

Panel Members:

Dan Schmidt, IV, Umpire
Howard Denbin, for Petitioners
Spiro Bantis, for Respondent

# AFFIDAVIT

_____, being duly sworn, deposes and says:

1. I live at _____

_____

2. I am employed as (position) by (name and address of employer), _____

_____

3. I am aware that the parties to "In the Matter of the Arbitration Between New England Reinsurance Corporation and Hartford Fire Insurance Company (Petitioners) and Pennsylvania National Mutual Insurance Casualty Insurance Company (Respondent/Counter-Petitioner)" have entered into a Confidentiality Agreement dated March 3, 2016. I have received and read a copy of that Confidentiality Agreement.

4. I agree to review or otherwise use the material produced in the instant arbitration by _____ only under supervision of a party's counsel and only in connection with this particular arbitration.

5. I agree that I am bound by the terms of the Confidentiality Agreement as though I were a party to the arbitration, and I will not disclose or discuss material produced by _____ or _____ to or with any person other than those permitted access to such material under the Confidentiality Agreement.

(Signature)_____

Sworn to before me this _____ day of _____, 20___.

_____
Notary Public (SEAL)