# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Pennsylvania National Mutual Casualty Insurance Company,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>Everest Reinsurance Company,<br><br>　　　　　Respondent. | Case No.: 1:18-mc-00653-JEJ<br><br>**Consolidated Cases** |
| Everest Reinsurance Company,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>Pennsylvania National Mutual Casualty Insurance Company,<br><br>　　　　　Respondent. | Case No.: 1:18-mc-00656-JEJ |

**EVEREST REINSURANCE COMPANY'S VERIFIED ANSWER TO PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY'S PETITION TO COMPEL ARBITRATION**

Everest Reinsurance Company ("Everest"), by and through its counsel, Saiber LLC, answers the Petition to Compel Arbitration by Pennsylvania National Mutual Casualty Insurance Company ("Penn National") as follows:

## PARTIES

1. Admitted.

2. Everest denies that it is a company organized under the laws of the State of New Jersey and states that it is a corporation organized under the laws of the State of Delaware. Everest admits that its principal place of business is in New Jersey, and that it was formerly known as Prudential Reinsurance Company.

## JURISDITION AND VENUE

3. Admitted.

## FACTUAL BACKGROUND

4. Everest admits that Penn National entered into a series of Excess of Loss Reinsurance Contracts with various reinsurers (the "Reinsurers"), including Everest, for the years 1991 through 1996 with multiple layers in each year (the "Treaties"). Everest also admits that its participation as one of several Reinsurers is accurately reflected in Paragraph 4. Everest denies that Exhibit B is a true and correct copy of the Second Excess of Loss Reinsurance Treaty for 1991 and states that it is not a complete copy of that treaty. The remaining allegations of Paragraph 4 are denied.

5. Everest denies any and all characterizations and legal conclusions regarding the Treaties. Everest states that Penn National and the Reinsurers agreed to submit to arbitration any dispute concerning the Treaties between Penn National

and its Reinsurers. The agreement to arbitrate requires that, "[i]f more than one reinsurer is involved in the same dispute, <u>all</u> such reinsurers <u>shall</u> constitute and act as one party for purposes of this [arbitration] Article …." (emphasis added). The arbitration clause requires that Penn National appoint a single arbitrator and that the Reinsurers "act as one" and appoint another arbitrator. Penn National's arbitrator and the Reinsurers' arbitrator then choose a third arbitrator to serve as umpire. Everest admits that if Penn National's arbitrator and the Reinsurers' arbitrator do not agree on a third arbitrator within sixty days of their appointment, the arbitration clause prescribes a selection process. The remaining allegations of Paragraph 5 are denied.

6.   Everest admits only that Penn National has billed its Reinsurers, including Everest, for lead paint losses in the Baltimore, Maryland area (the "Lead Paint Losses") and that a dispute has arisen between Penn National and its Reinsurers as to whether there is reinsurance coverage for those losses under the Treaties. Everest further states that Penn National participated in arbitration proceedings with New England Reinsurance Corporation ("NERCO") and Hartford Fire Insurance Company ("Hartford") concerning the Lead Paint Losses before a panel of three arbitrators (the "First Panel"). The remaining allegations of Paragraph 6 are denied.

7. Everest admits only that Penn National sent Everest a letter dated May 16, 2018, which purported to demand a second arbitration before a new, yet-to-be-constituted arbitration panel and purported to name a second arbitrator to act on Penn National's behalf in an arbitration under the Treaties concerning the Lead Paint Losses. Everest further states that Penn National failed to advise Everest of the arbitration before the First Panel and instead waited until May 16, 2018 to send a letter purporting to demand a different arbitration against Everest over the same Lead Paint Losses that were the subject of the arbitration before the First Panel. The remaining allegations of Paragraph 7 are denied.

8. Everest admits only that on July 27, 2018, it responded by letter to Penn National's letter purporting to demand a second arbitration before a new panel. Everest denies any and all characterizations and legal conclusions regarding its letter. Everest further states that its letter to Penn National stated that the attempt to commence arbitration before a second panel was a nullity, and that Everest would designate "provisionally and alternatively" as Everest's arbitrator the same individual appointed as the Reinsurers' arbitrator before the First Panel. The remaining allegations of Paragraph 8 are denied.

9. Everest admits only that it wrote to the First Panel on July 27, 2018. Everest denies any and all characterizations and legal conclusions regarding that July 27, 2018 letter. Everest also denies that the dispute over the Lead Paint Losses

involving NERCO and Hartford was a "separate dispute" and that the First Panel issued a final award. Everest notes that no award accompanied Penn National's Petition to Compel Arbitration and denies Penn National's characterizations and legal conclusions regarding any award or the participation of other reinsurers or the "confidential settlement" alleged by Penn National. Everest further states that it has a pending application to the First Panel and did not participate in earlier proceedings before that First Panel only because Penn National breached the mandatory consolidation provision of the arbitration clause and failed to include Everest in those proceedings. Everest lacks knowledge and information sufficient to form a belief as to whether Penn National, Hartford, and NERCO entered into a confidential settlement. Everest admits that it was not a party to any settlement over the Lead Paint Losses and denies that any such settlement concluded the dispute over reinsurance coverage for those losses. The remaining allegations of Paragraph 9 are denied.

10.    Denied. Everest states that by letter to the First Panel dated August 3, 2018, Penn National stated its refusal to participate in any further proceedings before the First Panel, including consideration of the merits of Everest's application to continue arbitration before the First Panel. Everest denies any and all characterizations and legal conclusions in Paragraph 10, including Penn National's assertions that the ongoing dispute over the Lead Paint Losses is a separate dispute,

that the First Panel is "now defunct," and that the arbitration before the First Panel is "now fully concluded." The remaining allegations of Paragraph 10 are denied.

11.   Everest admits only that the second arbitrator that Penn National purported to appoint contacted the Reinsurers' arbitrator. Upon information and belief, the Reinsurers' arbitrator refused to proceed with umpire selection for a second arbitration panel while Everest's application to continue the arbitration before the First Panel remained pending. Everest denies that the Treaties permit Penn National to appoint a second arbitrator and to seek the appointment of a second umpire for the dispute over the Lead Paint Losses. The remaining allegations of Paragraph 11 are denied.

12.   Everest denies any and all characterizations and legal conclusions contained in Paragraph 12, including Penn National's characterization of the First Panel as "disbanded." Everest admits only, upon information and belief, that the individual appointed as the Reinsurers' arbitrator, who was also "provisionally and alternatively" appointed as Everest's arbitrator in the new arbitration that Penn National purported to commence, advised Penn National's second arbitrator that Everest has a pending application to continue arbitration before the First Panel and that umpire selection in the new arbitration should not take place while that application is pending. The remaining allegations of Paragraph 12 are denied.

13. Denied. Everest incorporates by reference its response to Paragraph 12 and further states that the arbitration agreement in the treaties between Penn National and its Reinsurers does not permit Penn National to commence a separate, new arbitration, to appoint a second arbitrator, or to seek to select a second umpire for the dispute over the Lead Paint Losses. The remaining allegations of Paragraph 13 are denied.

14. Admitted. Everest further states that the terms of the Treaties require Penn National to participate in arbitration with the Reinsurers "constitut[ing] and act[ing] as one" and that those terms permit Penn National to appoint only one arbitrator to act on its behalf for its dispute with the Reinsurers over the Lead Paint Losses. The terms of the Treaties, particularly the arbitration clause's mandatory consolidation provision, require Penn National to proceed with arbitration before the First Panel.

15. Everest denies Penn National's mischaracterization of "the dispute" over the Lead Paint Losses. Everest admits only that Penn National's dispute with its Reinsurers over the Lead Paint Losses is arbitrable pursuant to the mandatory consolidation provision and other terms of the arbitration clause contained in the Treaties. The remaining allegations of Paragraph 15 are denied.

16. Everest denies Penn National's mischaracterization of "the dispute" over the Lead Paint Losses. Everest admits only that Penn National's dispute with

its Reinsurers over the Lead Paint Losses is arbitrable pursuant to the mandatory consolidation provision and other terms of the arbitration clause contained in the Treaties. The remaining allegations of Paragraph 16 are denied.

## **AFFIRMATIVE DEFENSES**

1. The Petition fails to state a claim upon which relief may be granted.

2. Penn National's claim is barred, in whole or in part, by its failure to submit to arbitration pursuant to the terms of the Treaties.

3. Penn National's claim is barred, in whole or in part, by its breach of the mandatory consolidation clause.

4. Penn National has the burden of proving that Everest refused to arbitrate pursuant to a valid agreement to arbitrate. To the extent that Penn National fails to do so, all relief in its Petition should be denied.

5. Everest may have additional affirmative defenses that are presently unknown. Everest reserves the right to amend its Answer to state additional affirmative defenses.

**WHEREFORE** Everest respectfully requests that this Court enter an Order:

(a) dismissing with prejudice Penn National's Petition to Compel Arbitration;

(b) compelling the parties to arbitrate their dispute, including issues of jurisdiction, consolidation and any other questions of arbitral procedure, before the

First Panel;

(c) ordering Penn National to pay the fees and expenses of its arbitrator and one-half of the fees and expenses of the umpire of the First Panel;

(d) staying the second arbitration purportedly commenced by Penn National against Everest; and

(e) granting such other relief as the Court deems just and proper.

**SAIBER LLC**

Dated: January 9, 2019   By:   s/ *Jeffrey S. Leonard, Esq.*
Jeffrey S. Leonard   (NJ 031161993)
jleonard@saiber.com
(Admitted pro hac vice)

Joseph J. Schiavone (NJ 012761989)
jschiavone@saiber.com
(Admitted pro hac vice)

Marc E. Wolin     (PA 65437)
mwolin@saiber.com

18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932
Tel. 973-622-3333
Fax 973-622-3349
Attorneys for Respondent-Petitioner
Everest Reinsurance Company

1351532.docx

Case 1:18-mc-00653-JEJ   Document 20   Filed 01/09/19   Page 10 of 10

## VERIFICATION

I, __Anthony Del Guercio__, am authorized to make this verification on behalf of Respondent Everest Reinsurance Company ("Everest"). Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the statements of fact in Everest's Verified Answer to Pennsylvania National Mutual Casualty Insurance Company's Petition to Compel Arbitration are true and correct. Executed on January __7__, 2019.

_____

Printed Name: __Anthony Del Guercio__

1351532.docx