# Exhibit C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ONEBEACON INSURANCE COMPANY,

Petitioner,

v.

EVEREST REINSURANCE COMPANY,

Respondent.

Civ. Action No. 1:17-cv-10751

**MOTION TO IMPOUND AND SEAL**
**CERTAIN ARBITRATION INFORMATION**

Pursuant to Local Rule 7.2 and for the reasons set forth in the accompanying Memorandum, respondent Everest Reinsurance Company ("Everest") respectfully requests that the Court order that the following documents be sealed and impounded and not be subject to public disclosure: (a) the Final Award dated February 14, 2017 ("Final Award"); (b) the Ruling on Motion for Clarification of the Final Award dated April 13, 2017 ("Clarification Order"); and (c) any unredacted filing in this action discussing the contents of those two documents. Everest also respectfully requests that the Court order each party to redact from all publicly filed documents any discussion of the contents of the Final Award and the Clarification Order.

Everest further requests that these materials remain impounded and sealed unless and until the Court determines that the information should no longer be impounded and sealed, at which time Everest requests that the Court allow counsel for

Everest to retrieve the foregoing documents from the Court's file and that the material not be made accessible to the public.

In support of this motion, Everest submits the following documents:

1. Memorandum in support of Everest's motion to impound and seal certain Arbitration Information;

2. Declaration of Jeffrey S. Leonard, Esq. dated April 27, 2017, with exhibits annexed thereto; and

3. Affidavit of Stephen H. Martin, sworn to on April 27, 2017.

WHEREFORE, Everest requests that the Court grant its motion to impound and seal and that the Court grant such other and further relief that it deems just and necessary.

Dated: April 28, 2017

Respectfully submitted,

EVEREST REINSURANCE COMPANY

By its attorneys,

/s/William J. Fidurko
William J. Fidurko, BBO #567064
Tucker, Saltzman, Dyer & O'Connell, LLP
50 Congress Street, Suite 430
Boston, MA 02109
Tel: (617) 986-6220
Fax: (617) 986-6229
fidurko@tsd-lawfirm.com

BUDD LARNER, P.C.
Joseph J. Schiavone (not admitted in D. Mass.)
Jeffrey S. Leonard (not admitted in D. Mass.)
David I. Satine, Esq. (not admitted in D. Mass.)
150 John F. Kennedy Parkway
Short Hills, New Jersey 07078
(973) 379-4800 (telephone)
(973) 379-7734 (facsimile)

**CERTIFICATE OF SERVICE**

I, William J. Fidurko, hereby certify that on April 28, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to all parties:

/s/William J. Fidurko

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ONEBEACON INSURANCE COMPANY,

Petitioner,

v.

EVEREST REINSURANCE COMPANY,

Respondent.

Civ. Action No.

**AFFIDAVIT OF STEPHEN H. MARTIN IN SUPPORT OF EVEREST'S MOTION TO IMPOUND AND SEAL CERTAIN CONFIDENTIAL ARBITRATION INFORMATION**

I, Stephen H. Martin, do hereby depose and say under oath:

1. I am employed by respondent Everest Reinsurance Company ("Everest") as a Director of Claims. I am the Everest employee primarily responsible for handling reinsurance claims submitted to Everest by petitioner OneBeacon Insurance Company ("OneBeacon") under the following reinsurance agreements: (a) the Multiple Line Reinsurance Treaty, on which Everest in effect from January 1, 1973 to January 1, 1980; and (b) the Casualty Excess of Loss Treaty in effect from January 1, 1980 to January 1, 1984 (collectively, the "Treaties"). I am also responsible for handling reinsurance claims submitted to Everest by certain other reinsureds. I submit this affidavit in support of Everest's motion to impound and seal the Final Award dated February 14, 2017 ("Final Award") and the Clarification Order dated April 13, 2017 ("Clarification Order").

2. By letter to me dated February 13, 2015, OneBeacon demanded arbitration under the Treaties against Everest.

3. The parties proceeded to arbitration and the arbitration panel issued the Final Award and, subsequently, the Clarification Order.

4. I have been involved in numerous reinsurance arbitrations. Those arbitrations and the awards issued in them have been confidential, which, in my experience, is standard in the reinsurance industry. This means that awards issued in one arbitration generally cannot be cited in another arbitration.

5. If the Final Award and the Clarification Order were not to be sealed and impounded, that would be counter to the usual practice in reinsurance arbitrations, in which the arbitration and award are confidential. This would pose specific harm to Everest, because, contrary to the usual practice in reinsurance arbitrations, reinsureds could try to use the Final Award and Clarification Order to seek recoveries against Everest in other arbitrations before different arbitrators selected to preside over different disputes.

S. H. Martin
STEPHEN H. MARTIN

Sworn to and subscribed before me this 27th day of April 2017.

[signature]
Notary Public

1132350.docx

EILEEN M. FRIEL
Notary Public, State of New Jersey
My Commission Expires
August 03, 2019

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ONEBEACON INSURANCE COMPANY,

Petitioner,

v.

EVEREST REINSURANCE COMPANY,

Respondent.

Civ. Action No. ____________

**DECLARATION OF JEFFREY S. LEONARD IN SUPPORT OF EVEREST'S MOTION TO IMPOUND AND SEAL CERTAIN ARBITRATION INFORMATION**

I, JEFFREY S. LEONARD, declare the following to be true under penalty of perjury and pursuant to 28 U.S.C. § 1746:

1. I am a shareholder in the law firm of Budd Larner, P.C. and a member of the New Jersey and New York bars.

2. I was counsel for respondent Everest Reinsurance Company ("Everest") in a confidential reinsurance arbitration between Everest and petitioner OneBeacon Insurance Company ("OneBeacon"). I make this Declaration to set before the Court certain facts and documents in support of Everest's motion pursuant to Local Rule 7.2 to impound and seal certain Arbitration Information.

3. By letter dated February 13, 2015, OneBeacon demanded arbitration under two reinsurance agreements against Everest.

4. Everest subsequently counter-demanded arbitration against OneBeacon under those agreements.

5. Pursuant to the arbitration clauses in the reinsurance agreements, a three-member arbitration panel ("Panel") was appointed.

6. Attached as Exhibit A is the Confidentiality Order entered by the Panel on April 27, 2016.

7. The Panel delivered its Final Award to the parties on February 14, 2017 ("Final Award"). On April 13, 2017, the Panel issued a Ruling on Motion for Clarification of the Final Award ("Clarification Order").

8. On April 21, 2017, OneBeacon, through its counsel, notified Everest that it planned to commence proceedings in this Court on April 28, 2017 to confirm the Final Award and the Clarification Order.

9. As required by the Confidentiality Order, Everest and OneBeacon conferred to coordinate the filing of this motion with OneBeacon's petition to confirm.

10. Attached as Exhibit B is an excerpt from Section 14.03 of Modern Reinsurance Law and Practice by Barry R. Ostrager and Mary Kay Vyskocil (3d. ed. 2014).

11. Attached as Exhibit C is an excerpt from the ARIAS-US Practical Guide to Reinsurance Arbitration Procedure (2004 rev. ed.), which was downloaded from the ARIAS-US website (http://www.arias-us.org/wp-content/uploads/2016/06/Practical-Guide-to-Reinsurance-Arbitration-Procedure-2004.pdf) on April 27, 2017.

12. Attached as Exhibit D is an excerpt from Section 22:6 of Law of Reinsurance by Graydon S. Staring and Hon. Dean Hansell (2017 ed.).

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 27, 2017.

JEFFREY S. LEONARD

1132684.docx

# EXHIBIT A

IN THE MATTER OF THE ARBITRATION

between

ONEBEACON INSURANCE COMPANY,

Claimant,

– and –

EVEREST REINSURANCE COMPANY,

Respondent.

Peter H. Bickford, Umpire
Susan S. Claflin, Arbitrator
G. Kathleen Karnell, Arbitrator

**CONFIDENTIALITY ORDER**

1. The parties to be bound by this Order are:

a. The Claimant OneBeacon Insurance Company and its parent corporation, subsidiaries, affiliates, agents, employees, officers and directors.

b. The Respondent Everest Reinsurance Company, and its parent corporation, subsidiaries, affiliates, agents, employees, officers and directors.

2. Except as provided in Paragraph 3 below, and absent written agreement between the parties to the contrary, Claimant OneBeacon Insurance Company and Respondent Everest Reinsurance Company agree that all briefs, depositions and hearing transcripts generated in the course of this arbitration, documents created for the arbitration or produced in the proceedings by the opposing party or third-parties, final award and any interim decisions, correspondence, oral discussions and information exchanged in connection with the proceedings (hereinafter collectively referred to as "Arbitration Information") will be kept confidential. This Confidentiality Agreement will remain in effect even after conclusion of the arbitration proceedings.

3. Disclosure of Arbitration Information may be made: (a) to the extent necessary to obtain compliance with any interim decisions or the final award herein, or to secure payment from retrocessionaires; (b) in connection with court proceedings relating to any aspect of the arbitration, including but not limited to motions to confirm, modify or vacate an arbitration award; (c) as is necessary in communications with auditors retained by any party, or federal or state regulators; (d) as is necessary to comply with subpoenas, discovery requests or orders of any court; and (e) to the extent Arbitration Information is already lawfully in the public domain. Any disclosures pursuant to subparagraphs (a) or (c) shall be accompanied by a copy of this Confidentiality Agreement and an instruction to any recipient to maintain the confidentiality of all Arbitration Information. In connection with any disclosures pursuant to subparagraph (b), the parties agree, subject to court approval, that all submissions of Arbitration Information to a court

shall be sealed. If any party is requested or required under subparagraph (d) to disclose Arbitration Information, subject to any applicable legal restrictions, that party will give written notice to the other(s) as soon as possible after the subpoena, discovery request or court order is received. In all contexts, all parties will make good-faith efforts to limit the extent of the disclosures, if any, to be made, and will cooperate with each other in resisting or limiting disclosure of Arbitration Information.

4. For the purpose of conducting this arbitration, Arbitration Information may be disclosed as needed or appropriate to the following persons only:

a. the arbitration panel, who evidence by their execution hereof their undertaking to maintain Arbitration Information in confidence as set forth herein;

b . counsel for a party or employees of counsel's law firm who are assisting counsel;

c. employees and agents of the parties for purposes consistent with this agreement;

d. any party's deposition or trial witness;

e. any person retained by counsel for a party to assist in this arbitration; provided, however, that such person shall agree to be bound by the terms of this Confidentiality Agreement as if that person were a party, and shall so acknowledge by executing, prior to receipt of or access to Arbitration Information, an affidavit in the form attached hereto as Exhibit A; or

f. any non-party deposition or trial witness; provided, however, that such person shall agree to be bound by the terms of this Confidentiality Agreement as if that person were a party, and shall so acknowledge by executing, prior to receipt of or access to Arbitration Information, an affidavit in the form attached hereto as Exhibit A.

5. If a party is requested or required to disclose Arbitration Information, subject to applicable legal restrictions, that Party will: 1) notify the other party in writing as soon as possible after the subpoena, request or court order is received, to permit the other party to seek legal protection against any such disclosure; and 2) tender the defense of that demand to the party that produced the Arbitration Information, or permit that party to associate in the defense of that demand. Unless the demand has been timely limited, quashed or extended, the obligated party will thereafter be entitled to comply with such demand, request or court order to the extent required by law. If requested by any other party, the obligated party will cooperate (at the expense of the requesting other party) in the defense of a demand.

6. Any party commencing a court proceeding relating to any aspect of the arbitration, including but not limited to motions to confirm, modify or vacate an arbitration award, shall provide, prior to filing with the court any papers in such proceeding, five business days' notice to the other party in order to allow the other party, if it wishes, to seek to seal all or a portion of the papers in the court proceeding. Such notice shall identify (i) the court in which the proceeding shall be filed and (ii) the Arbitration Information that will be included in the papers to be filed with the

court. In the event the noticed party wishes to join in the request to seal all or a portion of the papers to be filed in the court proceeding, the parties will reasonably cooperate to try to coordinate the filing of the papers commencing the court proceeding with the sealing request.

7. The parties recognize that serious injury could result to any party and its business if the other party breaches its obligations under this Agreement. Therefore, each party agrees that all parties will be entitled to seek a restraining order, injunction or other equitable relief if another party breaches its obligations under this Agreement, in addition to any other remedies and damages that would be available at law or equity.

SO ORDERED

Peter H. Bickford, Umpire, on behalf of the Panel

Dated: April 27, 2016

**EXHIBIT A**

IN THE MATTER OF THE ARBITRATION

between

ONEBEACON INSURANCE COMPANY,

Claimant,

– and –

EVEREST REINSURANCE COMPANY,

Respondent.

Peter H. Bickford, Umpire
Susan S. Claflin, Arbitrator
G. Kathleen Karnell, Arbitrator

**AFFIDAVIT**

__________________________, being duly sworn, deposes and says:

1. I live at

________________________________________________________________.

2. I am employed as (position) by (name and address of employer),

________________________________________________________________________.

3. I am aware that the parties to In the Matter of the Arbitration Between OneBeacon Insurance Company and Everest Reinsurance Company have entered into a Confidentiality Agreement dated April 25, 2016. I have received and read a copy of that Confidentiality Agreement.

4. I agree to review or otherwise use the material produced in the instant arbitration by

________________________________________________________________________

only under supervision of a party's counsel and only in connection with this particular arbitration.

5. I agree that I am bound by the terms of the Confidentiality Agreement as though I were a party to the arbitration, and I will not disclose or discuss material produced by __________________ or _________________________________________________________________ to or with any person other than those permitted access to such material under the Confidentiality Agreement.

(Signature)________________________________________________________
Sworn to before me this _____ day of ____________________, 20___.

________________________________
Notary Public (SEAL)

# EXHIBIT B

# MODERN REINSURANCE LAW

2014 Edition

Barry R. Ostrager

and

Mary Kay Vyskocil

THOMSON REUTERS

*For Customer Assistance Call 1-800-328-4880*

Mat #41669001



© 2014 Thomson Reuters

The publisher is not engaged in rendering legal or other professional advice
and this publication is not a substitute for the advice of an attorney. If you
require legal or other expert advice, you should seek the services of a
competent attorney or other professional.



## CHAPTER 13 DISPUTES WITH FOREIGN REINSURERS

13:01 Service of Suit Clause
- 13:01[a] The Right of Removal
- 13:01[b] Forum Non Conveniens

13:02 Pre-Appearance Security Requirements
- 13:02[a] Model Unauthorized Insurers Process Act
- 13:02[b] Applicability to Reinsurers
- 13:02[c] Availability in Arbitration
- 13:02[d] Amount of the Security
- 13:02[e] Defenses to Security Requirements
- 13:02[f] Immunity of Foreign States
- 13:02[g] Appealability of Bond Posting Orders

13:03 Treaties Affecting Enforcement of Foreign Arbitration Awards

13:04 Unique Issues Involving Lloyd's of London
- 13:04[a] Diversity Jurisdiction
  - 13:04[a](1) Complete Diversity Requirement
  - 13:04[a](2) Consent for Removal Under 28 U.S.C. § 1446
  - 13:04[a](3) Claims Against Insurers Owned by a Foreign State
  - 13:04[a](4) Amount in Controversy Requirement
- 13:04[b] The Lloyd's American Trust Fund
- 13:04[c] Joining Equitas As a Party
- 13:04[d] Discovery Issues
  - 13:04[d](1) Discovery From "Following Market" Defendants
  - 13:04[d](2) Discovery of Documents Prepared for Market-Wide Groups
  - 13:04[d](3) Discovery From Equitas

## CHAPTER 14 REINSURANCE ARBITRATIONS

14:01 The Arbitration Clause
- 14:01[a] The Agreement to Arbitrate
- 14:01[b] Scope of the Arbitration Clause
  - 14:01[b](1) Arbitration of Extra-Contractual Claims
  - 14:01[b](2) Class Arbitration
- 14:01[c] Choice of Law Provisions in Arbitration Clauses

14:02 Service of Suit Clause and Arbitration Clause

14:03 Procedural Issues Regarding the Arbitration of Reinsurance Disputes
- 14:03[a] Commencement of Proceeding
  - 14:03[a](1) Compelling Arbitration
- 14:03[b] The Arbitration Panel
  - 14:03[b](1) Method for Selecting Arbitrators
  - 14:03[b](2) Arbitrator Qualifications

14:03[b](2)(a) Cases Discussing Party-Appointed Arbitrators
14:03[b](2)(b) Cases Discussing Umpires and Neutral Arbitrators
14:03[b](2)(c) Moving to Disqualify an Arbitrator
14:03[c] *Ex Parte* Communications with Arbitrators
14:03[c](1) Pre-designation Contacts
14:03[c](2) *Ex Parte* Contacts During the Arbitration
14:03[c](3) *Ex Parte* Contacts After an Award
14:03[d] Discovery
14:03[d](1) Pre-Hearing Document Discovery From Non-Parties
14:03[d](2) Pre-Hearing Discovery Depositions
14:03[d](3) Territorial Reach of Arbitral Subpoenas
14:03[d](4) Arbitral Subpoenas Under State Law
14:03[e] Confidentiality
14:03[f] Available Relief in an Arbitration
14:03[f](1) Equitable Relief
14:03[f](2) Temporary Equitable Relief
14:03[f](3) Attorneys Fees and Costs
14:03[f](4) Summary Disposition
14:03[f](5) Reformation and Rescission
14:03[f](6) Partial Final Awards
14:03[f](7) Advisory Opinions/Declaratory Relief
14:03[g] The Award
14:03[h] Termination of Panel's Power—the *Functus Officio* Doctrine
14:04 Consolidation of Arbitration Proceedings
14:05 Enforcement of an Arbitration Award
14:05[a] Petition to Confirm
14:05[b] Motion to Vacate Arbitration Award
14:05[c] Motion to Modify or Correct an Arbitration Award
14:05[d] Remand of an Ambiguous Award
14:06 Preclusive Effect of an Arbitration Award
14:06[a] Applicability of *Res Judicata* and Collateral Estoppel
14:06[b] No Requirement that the Award Must Be Confirmed
14:06[b](1) Majority of Cases Are Inconclusive
14:06[b](2) Cases Holding That Confirmation Is Not Required
14:06[c] Deciding the Preclusive Effect of an Award or Judgment in a Subsequent Arbitration
14:06[d] Application of *Res Judicata* and Collateral Estoppel by Arbitrators
14:07 Reverse Preemption

### 14:03[e] Confidentiality

Reinsurance arbitrations are typically conducted pursuant to a confidentiality agreement that is so ordered by the panel. *See, e.g.*, Practical Guide to Reinsurance Arbitration Procedure § 3.8, ARIAS-US (2004 rev. ed.), comment c ("It is generally agreed throughout the industry that reinsurance arbitrations are and should be confidential in most circumstances, even absent the parties' complete agreement."); *see also Nationwide Mutual Ins. Co. v. Randall & Quilter Reins. Co.*, No. 2:07-cv-0120, 2007 U.S. Dist. LEXIS 58746, *2 (S.D. Ohio Aug. 10, 2007) ("The parties arbitrated the underlying dispute pursuant to rules which typically require both parties to the arbitration to sign a confidentiality agreement."). *Cf. John Forster Emmott v. Michael Wilson & Partners Ltd.*, [2008] EWCA Civ. 184 ¶¶ 81, 105, 111 (C.A. Mar. 12, 2008) (under English jurisprudence, parties to an arbitration have implied obligation to maintain confidentiality of arbitration documents, but in present case lower court properly ordered documents disclosed in interests of justice).

The typical confidentiality agreement used in reinsurance arbitrations conducted in the United States provides, among other things, that:

> Disclosure of Arbitration Information may be made: (a) to the extent necessary to obtain compliance with any interim decisions or the final award herein, or to secure payment from retrocessionaires; (b) in connection with court proceedings relating to any aspect of the arbitration, including but not limited to motions to confirm, modify or vacate an arbitration award; (c) as is necessary in communications with auditors retained by any party, or federal or state regulators; (d) as is necessary to comply with subpoenas, discovery requests or orders of any court; and (e) to the extent Arbitration Information is already lawfully in the public domain. . . . . In connection with any disclosures pursuant to subparagraph (b), the parties agree, subject to court approval, that all submissions of Arbitration Information to a court shall be sealed . . . .

Forms, ARIAS-US (2008).

The case of *Nationwide Mutual Insurance Co. v. Randall & Quilter Reinsurance Co.*, No. 2:07-cv-0120, 2007 U.S. Dist. LEXIS 58746 (S.D. Ohio Aug. 10, 2007), provides cautionary advice regarding the standards that a party must meet in obtaining a court order requiring or permitting the parties to file confidential documents under seal, particularly where one party to the arbitration opposes the sealing order. In *Nationwide*, the court granted a motion to file documents under seal based on R&Q's representation that the arbitration panel had ordered that documents be filed under seal in any related court proceedings.

# EXHIBIT C



# Practical Guide to Reinsurance Arbitration Procedure

**2004**

**REVISED EDITION**



# TABLE OF CONTENTS

*INTRODUCTION*

........................................1

*CHAPTER 1: ARBITRATION INITIATION*

1.1 Illustrative Arbitration Clause ........ 3

1.2 Arbitration Demand ........ 6

1.3 Response to the Arbitration Demand ........ 8

*CHAPTER 2: PANEL SELECTION*

2.1 Sample Arbitration Clause Language for Panel Formation ........ 9

2.2 Alternatives for Umpire Selection ........ 10

2.3 "Disinterested" Arbitrators ........ 11

2.4 Disclosure Statements ........ 12

*ARIAS•U.S. Sample Form 2.1:* Umpire Questionnaire ........ 14

*CHAPTER 3: THE ORGANIZATIONAL MEETING*

3.1 Pre-Meeting Conference Call ........ 19

3.2 Site of the Organizational Meeting ........ 20

3.3 Statement Submitted to the Panel Before the Organizational Meeting ........ 20

3.4 Identification of Issues to Be Arbitrated ........ 21

3.5 Organizational Meeting Attendance ........ 21

3.6 Panel Disclosures ........ 22

3.7 Formal Acceptance of Panel ........ 22

3.8 Confidentiality ........ 23

3.9 *Ex Parte* Communications ........ 24

3.10 Scheduling ........ 25

3.11 Party Stipulations ........ 25

3.12 Interim Disputes ........ 26

3.13 Miscellaneous Issues ........ 26

*ARIAS•U.S. Sample Form 3.1:* Agenda for the Organizational Meeting ........ 27

*ARIAS•U.S. Sample Form 3.2:* Hold Harmless Agreement ........ 29

*ARIAS•U.S. Sample Form 3.3:* Confidentiality Agreement ........ 31

*COMMENT B:*

A party may effectively have no remedy, other than proceeding to arbitration with all rights reserved, if it challenges one or more Panel members. A party in this circumstance should consider appropriate amendments to the proposed Hold Harmless Agreement, ARIAS•U.S. Sample Form 3.2. Many courts have refused to entertain pre-hearing petitions to disqualify arbitrators on the ground of bias, absent special circumstances (e.g., a request to enforce a contractual requirement for "impartial" arbitrators). Such challenges, some courts have held, should be brought after the arbitration on a motion to vacate the award.

*COMMENT C:*

Panel members have no intrinsic right to be "held harmless" by all parties to the arbitration. Panel members presumably have arbitral immunity (akin to judicial immunity) that protects them from liability for their service as arbitrators, although the extent of this immunity is not precisely defined in all jurisdictions. Clearly, a Panel has the power (but is not obliged) to proceed without a hold harmless agreement. It is the position of ARIAS•U.S. that absent extraordinary circumstances, parties should hold Panels harmless. Panel members generally are retired individuals or current executives acting in a personal capacity. To encourage their continued participation, these individuals should in most circumstances receive assurance that their personal assets are not at risk.

*3.8 CONFIDENTIALITY:*

The confidentiality of arbitration proceedings should be memorialized in either an agreement by the parties and the Panel, or an order entered by the Panel, setting forth the terms and scope of the confidentiality.

*COMMENT A:*

Most parties to arbitration prefer that the proceedings remain confidential. One advantage of the arbitration process is that confidentiality is much easier to maintain in arbitrations than in litigation.

*COMMENT B:*

A confidentiality agreement is usually entered by agreement of the parties and the Panel.

*COMMENT C:*

It is generally agreed throughout the industry that reinsurance arbitrations are and should be confidential in most circumstances, even absent the parties' complete agreement. Cases may arise, however, in which either partial or no confidentiality may be appropriate (*e.g.*, if the cedent wants to disclose arbitration results to a related reinsurer, or if the current proceedings may be relevant to another pending or future proceeding between the same parties). If one party opposes total confidentiality of the arbitration, the Panel should consider the parties' arguments on the issue and use its discretion in ordering whether and to what extent the arbitration should be confidential. If the parties agree to a certain level of confidentiality, the Panel should enter an order or sign a confidentiality agreement reflecting the parties' agreement.

*COMMENT D:*

A sample Confidentiality Agreement form appears at the end of this chapter as ARIAS•U.S. Sample Form 3.3. This form can be converted to an Order, rather than an Agreement, if necessary.

*3.9 EX PARTE COMMUNICATIONS:*

At the Organizational Meeting, the Panel should establish a date for the cut-off of all *ex parte* communications between parties and the Panel members.

*COMMENT A:*

Possible dates for the cut-off of *ex parte* communications include (a) the Organizational Meeting; (b) the end of discovery, (c) the filing of pre-hearing briefs, or (d) commencement of the hearing.

*COMMENT B:*

There is a wide range of views about the most appropriate cut-off date for *ex parte* contact. Some believe that all *ex parte* communications between the parties and the Panel must cease immediately after the Organizational Meeting to ensure the fair-minded administration of the arbitration. Others believe that procedural issues can be resolved more efficiently, and settlement prospects can occasionally be advanced, if *ex parte* contact is permitted up until the hearing. No *ex parte* communication should be permitted during the final hearing because the risk of disclosing confidential Panel deliberations involving the resolution of the dispute is too great. Since each Panel member has a duty to hear the evidence and decide the case impartially, there should be no reason for any *ex parte* contact with the parties during the hearing.

# EXHIBIT D

Case 1:17-cv-10751-LTS Document 3-2 Filed 04/28/17 Page 20 of 25

# LAW OF REINSURANCE

**GRAYDON S. STARING**

**of the California and United States Supreme Court Bars**

**HON. DEAN HANSELL**

**Judge, California Superior Court**

RECEIVED
MAR 2 8 2017
LIBRARY

**2017 EDITION**

LIBRARY
Budd Larner, P.C.
150 John F Kennedy Pkwy
Short Hills NJ 07078-2703

**THOMSON REUTERS®**

*For Customer Assistance Call 1-800-328-4880*

Mat #41923004

© 2017 Thomson Reuters

Copyright is not claimed as to any part of the original work prepared by a
United States Government officer or employee as part of the person's official
duties.

For authorization to photocopy, please contact the **Copyright Clearance
Center** at 222 Rosewood Drive, Danvers, MA 01923, USA (978) 750-8400; fax
(978) 646-8600 or **West's Copyright Services** at 610 Opperman Drive, Eagan,
MN 55123, fax (651) 687-7551. Please outline the specific material involved,
the number of copies you wish to distribute and the purpose or format of the
use.

This publication was created to provide you with accurate and authoritative
information concerning the subject matter covered; however, this publication
was not necessarily prepared by persons licensed to practice law in a particular
jurisdiction. The publisher is not engaged in rendering legal or other
professional advice and this publication is not a substitute for the advice of an
attorney. If you require legal or other expert advice, you should seek the
services of a competent attorney or other professional.

ISBN: 978-0-314-84895-6

Case 1:17-cv-10751-LTS Document 5-2 Filed 04/28/17 Page 22 of 25

# Table of Contents

## PART I. NATURE AND HISTORY OF REINSURANCE

### CHAPTER 1. GENERAL INTRODUCTION

§ 1:1 Definitions
§ 1:2 Character as insurance
§ 1:3 Objectives
§ 1:4 Historical development
§ 1:5 Other relationships distinguished

### CHAPTER 2. TYPES OF REINSURANCE AND THEIR USES

§ 2:1 Generally
§ 2:2 The character of facultative reinsurance
§ 2:3 The uses of facultative reinsurance
§ 2:4 The character of treaty reinsurance
§ 2:5 The uses of treaty reinsurance
§ 2:6 Pro rata treaties
§ 2:7 Excess and catastrophe treaties
§ 2:8 Fronting contracts
§ 2:9 Mixed and other types of reinsurance
§ 2:10 Collected definitions

## PART II. LEGALITY AND LEGAL PREMISES OF THE CONTRACT

### CHAPTER 3. JURISDICTION

§ 3:1 Legislative jurisdiction
§ 3:2 Judicial jurisdiction
§ 3:3 Authority of federal and state precedents

### CHAPTER 4. GOVERNING LAW

§ 4:1 Necessity of definite proper law
§ 4:2 Proper law chosen by parties
§ 4:3 Proper law generally (non-marine)
§ 4:4 Proper law of marine reinsurance
§ 4:5 Usages

§ 18:3 The varieties of clauses considered
§ 18:4 Historical development of loss settlement clauses
§ 18:5 Identity of subject
§ 18:6 Underlying liability and amount—Various wordings
§ 18:7 Underlying liability and amount—Particular exceptions
§ 18:8 Changes in the reinsured policy
§ 18:9 Good faith, reasonableness, skill, and diligence
§ 18:10 Allocations of loss
§ 18:11 Errors and omissions
§ 18:12 Summary of the law

## CHAPTER 19. INSOLVENCIES

§ 19:1 Receivership and liquidation generally
§ 19:2 Effect on contracts
§ 19:3 Reinsurance claims
§ 19:4 Premium claims
§ 19:5 Preferences
§ 19:6 Set-offs
§ 19:7 Restraints of proceedings

## CHAPTER 20. REMEDIES, GENERALLY

§ 20:1 Introduction
§ 20:2 Interpretation and enforcement of contract terms
§ 20:3 Rescission
§ 20:4 Reformation
§ 20:5 Special defenses and conditions
§ 20:6 Burdens of proof; Facts and law
§ 20:7 Discovery

## CHAPTER 21. ARBITRATION AND ARBITRATORS; FUNDAMENTALS

§ 21:1 Introduction
§ 21:2 Governing law and policy
§ 21:3 Rules and administration
§ 21:4 Arbitrability; the agreement
§ 21:5 Arbitrability; the arbitrator or the court?
§ 21:6 Compulsion; stay of litigation
§ 21:7 Waiver
§ 21:8 Arbitrators' qualifications
§ 21:9 Selection and appointment of arbitrators

## CHAPTER 22. ARBITRATION PROCEEDINGS AND AWARDS

§ 22:1 Parties, joinder, and consolidation

§ 22:2 Discovery
§ 22:3 Hearings
§ 22:4 Conduct of arbitrators; neutrality
§ 22:5 Decisions; special standards; ex aequo et bono
§ 22:6 Awards generally
§ 22:7 Interim awards
§ 22:8 Finality; where made
§ 22:9 Proceedings after award

**CHAPTER 23. TERRORISM AND WAR RISKS**

§ 23:1 Introduction
§ 23:2 General market effects of the World Trade Center terrorism
§ 23:3 Coverages and exclusion: Terrorism and war risk clauses
§ 23:4 Events and occurrences
§ 23:5 Other contract issues
§ 23:6 The federal program
§ 23:7 Regulation
§ 23:8 Disputes

**Table of Laws and Rules**

**Table of Cases**

**Index**

If the parties have agreed that a reasoned award or findings of fact and conclusions of law should be rendered, it is most important that the arbitrators comply. In an instance where the arbitration clause required findings of fact and conclusions of law, one party resisted findings and persuaded the arbitrators not to make them in connection with an award in its favor. The award was confirmed and the judgment was reversed on appeal and the award ordered vacated, on the ground that the panel clearly failed to arbitrate the dispute according to the terms of the contract and therefore exceeded its powers. While recognizing that courts are unlikely to set aside an award by reason of lack of findings, the court held that the losing party simply did not get what it contracted for.[2]

### [2] Confidentiality and Disclosure

One of the attractions of arbitration in many instances is the possibility of maintaining confidentiality. The parties therefore sometimes agree on an order or stipulation of confidentiality as to the award to be made and other elements of the proceedings, with allowances for disclosure in case of legal necessity. There is, however, no general rule of law on the subject in arbitrations in the United States in the absence of express agreement.

In English arbitrations, the law has been held to impose a right and duty of confidentiality as to the entire proceeding, somewhat qualified as to the award and reasons.[3] In a later case testing the circumstances in which an award might be disclosed, the effect of the rule earlier laid down has been summarized:

> (i) an agreement to arbitrate contain[s] an implied term which imposed on both parties to it a duty to keep confidential from third parties the award, the reasons and all other documentary materials relating to the arbitration;
>
> (ii) the implied term further qualifie[s] that duty by the exception that the award and reasons might be disclosed as of right if it w[ere]

---

original). See also, Cat Charter, LLC v. Schurtenberger, 646 F.3d 836, 844 (11th Cir. 2011) (quotation omitted) (same).

[2]Western Employers Ins. Co. v. Jefferies & Co., Inc., 958 F.2d 258, Fed. Sec. L. Rep. (CCH) P 96563 (9th Cir. 1992). If parties stipulate that the arbitrator must provide a more detailed award, the court should make sure that the award "gives effect to that intent." Carmody Bldg. Corp. v. Richter & Ratner Contracting Corp., 2013 WL 4437213 (S.D. N.Y. 2013) (citation omitted).

[3]Hassneh Ins. Co. of Israel v. Mew, [1993] 2 Lloyd's Rep. 243 (QB) (re.; award and reasons could be disclosed, but confidentiality of other materials unqualified); but contra in New York, Galleon Syndicate Corp. v. Pan Atlantic Group, Inc., 223 A.D.2d 510, 637 N.Y.S.2d 104 (1st Dep't 1996) (re.; evidence at arbitration not generally protected from disclosure and absent confidentiality provision parties not prohibited from disclosing documents generated or exchanged).