# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, | : : : | 1:18-mc-653 |
| Petitioner, | : : | Hon. John E. Jones III |
| v. | : : | |
| EVEREST REINSURANCE COMPANY, | : : : | |
| Respondent. | : | |
| EVEREST REINSURANCE COMPANY, | : : : | |
| Petitioner, | : : : | |
| v. | : : : | |
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, | : : : : | |
| Respondent. | : | |

## **MEMORANDUM**

## **March 14, 2019**

Presently pending before the Court are competing motions to compel arbitration. (Docs. 1 and 31).[1] Pennsylvania National Mutual Casualty Insurance

---

[1] Everest Reinsurance Company's Motion to Compel Arbitration, (Doc. 31), was originally assigned a separate docket number at 1:18-mc-656. We consolidated Everest's Motion with the Motion to Compel Arbitration filed by Pennsylvania National Mutual Casualty Insurance Company, (Doc. 1), under docket number 1:18-mc-653.

1

Company ("Penn National") also filed four motions to seal. (Docs. 3, 24, 26, and 40). The motions have been fully briefed and are ripe for our review.

I.   INTRODUCTION

From 1991 to 1996, Penn National entered into several excess-of-loss reinsurance agreements (called "Treaties") with multiple reinsurance companies. Everest Reinsurance Company ("Everest") was one of those reinsurers. The Treaties were characterized by layers defined by increasing financial thresholds. The reinsurers, including Everest, assumed a discrete percentage of risk under each layer. Specifically, Everest assumed a percentage of liability in the second, third, and fourth layers of the Treaties of 1991, 1992, and 1993; the first, second, third, and fourth layers of the Treaties of 1994 and 1995; and the first, second, and third layers of the Treaties of 1996.

Importantly, for our purposes, each of the Treaties requires arbitration for any dispute between the parties regarding the Treaties and instructs each party to "appoint an individual as arbitrator and the two so appointed [arbitrators] . . . then appoint a third arbitrator." (Doc. 4-1 at 18). The arbitration clauses further state that, "[i]f more than one Reinsurer is involved in the same dispute, all such Reinsurers shall constitute and act as one party for the purposes of this Article." (*Id.*). A dispute arose between Penn National and Everest pertaining to reinsurance recoveries for certain losses that Penn National suffered. Penn National demanded

arbitration in writing on May 16, 2018. In response, Everest has appointed its own arbitrator. However, Everest maintains that the dispute should have been part of, and consequently decided by, an earlier arbitration that Penn National had convened with two other reinsurers, New England Reinsurance Corporation and Hartford Fire Insurance Company.[2] Although both Penn National and Everest have appointed individual arbitrators, Everest's arbitrator has not participated in appointing a third, neutral arbitrator.

## II. DISCUSSION

### A. Motions to Compel Arbitration

The Federal Arbitration Act ("FAA") "enables the enforcement of a contract to arbitrate, but requires that a court shall be 'satisfied that the making of the agreement for arbitration . . . is not in issue' before it orders arbitration." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013) (quoting 9 U.S.C. § 4). The parties here agree that they have a valid agreement to arbitrate disputes, and that this dispute is within the scope of that agreement. They also agree that the question of whether the dispute should have been consolidated

---

[2] Penn National had filed a Petition to Confirm Arbitration Award related to this prior arbitration on April 30, 2018, but withdrew the Petition just a few days later based on a confidential settlement agreement between those parties. *See Pennsylvania National Mutual Casualty Insurance Company v. New England Reinsurance Corporation and Hartford Fire Insurance Company*, Dkt. No. 1:18-mc-278. Everest has filed a Motion to Intervene and to Unseal Judicial Documents in that case. We will resolve Everest's motion in that matter in a separate, concurrent opinion.

3

with the prior arbitration or whether the present dispute requires forming a new arbitration panel should be resolved by arbitrators, not the Court. *See Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.*, 489 F.3d 580 (3d Cir. 2007). Thus, the issue before us is whether we should order the parties to appoint a new panel to decide the consolidation issue or whether we should send the parties back to Penn National's prior arbitration panel.

In *Westchester*, the Third Circuit discussed a similar situation. There, the parties formed eight contracts grouped into two reinsurance programs. 489 F.3d at 582. Each contract contained an arbitration clause. When a dispute arose, Westchester Fire sent Underwriters two arbitration demand letters: one for each reinsurance program. *Id.* Underwriters responded by filing petitions to compel arbitration in the District of New Jersey, asking the District Court to order a separate arbitration for each individual contract, or a total of eight arbitrations. *Id.* at 583. The District Court determined that it was not presented with whether a valid arbitration agreement existed, but with whether the parties had agreed to separate arbitrations or a single consolidated arbitration. *Id.* The District Court determined that the issue was "for the arbitrators not the courts to decide." *Id.* Thus, the District Court order the parties to proceed with the two arbitrations demanded by Westchester while noting that Underwriters was not precluded from seeking the same relief from the arbitration panel. *Id.*

4

The Third Circuit affirmed the District Court's holding in *Westchester*, grounding its analysis on two United States Supreme Court cases: *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) and *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003). In *Howsam*, the Supreme Court stated that the "question of arbitrability" – or the question of whether the parties submitted a particular dispute to arbitration – is limited in scope. 537 U.S. at 83. The Supreme Court determined that courts only decide narrow questions of arbitrability, such as "a dispute about 'whether the parties are bound by a given arbitration clause' or whether 'a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.'" 489 F.3d at 585 (quoting 537 U.S. 83-84). On the other hand, "'procedural' questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide.'" *Id.* (quoting 537 U.S. at 84). In *Green Tree*, the Supreme Court reiterated that "unless one finds 'clear and unmistakable evidence to the contrary' in an arbitration clause, only in certain 'gateway matters' will a court 'assume that the parties intended the courts, not arbitrators, to decide a particular arbitration-related matter.'" 489 F.3d at 586 (quoting 539 U.S. at 452). "Matters that concern 'neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties' will not fall within this 'narrow exception.'" *Id.* (quoting 539 U.S. at 452). Applying *Howsam* and *Green*

*Tree*, the Third Circuit reasoned that the issue before the District Court in *Westchester*, like the issue in *Green Tree*, was "'not whether the parties wanted a judge or an arbitrator to decide *whether they agreed to arbitrate a matter*,' but rather 'what *kind of arbitration proceeding* the parties agreed to.'" 489 F.3d at 587 (quoting *Green Tree*, 539 U.S. at 452) (emphasis in original). The Third Circuit held that such procedural arbitration matters should be decided by the arbitration panel, not the court. *Id.* at 590.

Similarly, the issue before us is procedural in nature. Everest argues that the consolidation provision in the arbitration clause is "mandatory." However, to find for Everest on that point, we would need to engage in an interpretation of the contractual language related to arbitration procedure, which would be inappropriate. The parties agree that the baseline procedure when a dispute arises is for each party to appoint an arbitrator, and for those arbitrators to jointly appoint a third, neutral arbitrator. Whether Everest should have been joined in Penn National's prior arbitration, or the impact of the prior arbitration award on the present dispute is a question for the arbitration panel, not the Court. Everest, of course, retains the right to seek the same relief from an arbitration panel, but the contractual process for appointing an arbitration panel must control our decision here. Therefore, we will grant Penn National's motion and deny Everest's motion.

B.  **Motions to Seal**

Penn National filed four motions to seal documents. (Docs. 3, 24, 26, 40). Specifically, Penn National asks the Court to seal Penn National's arbitration demand to Everest, along with subsequent responsive correspondence, and copies of the six treaties that form the basis of Penn National's arbitration demand. Although Penn National's request to seal these documents is spread across four motions, the arguments are essentially the same. Therefore, we will address the motions collectively.

"It is well-settled that there exists, in both criminal and civil cases, a common law public right of access to judicial proceedings and records." *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001) (citing *Littlejohn v. BIC Corp.*, 851 F.2d 673, 677-78 (3d Cir. 1988)). The right to access "envisions 'a pervasive common law right to inspect and copy public records and documents, including judicial records and documents.'" *Id.* (quoting *Leucadia, Inc. v. Applied Extrusion Tech., Inc.*, 998 F.2d 157, 161 (3d Cir. 1993)). The filing of a document with the Court "clearly establishes [its] status" as a judicial record. *Id.*

The presumption favoring public access can be overcome only if the party seeking the sealing of records shows "good cause" that "disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d

Cir. 1999) (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)).  The Third Circuit recognizes certain factors, "which are neither mandatory nor exhaustive" to consider when determining if "good cause" exists, including:

> (1) whether disclosure will violate any privacy interests;
>
> (2) whether the information is being sought for a legitimate purpose or for an improper purpose;
>
> (3) whether disclosure of the information will cause a party embarrassment;
>
> (4) whether confidentiality is being sought over information important to public health and safety;
>
> (5) whether the sharing of information among litigants will promote fairness and efficiency;
>
> (6) whether a party benefitting from the order of confidentiality is a public entity or official; and
>
> (7) whether the case involves issues important to the public.

*Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).  The overarching aim of this analysis is to balance private interests with public interests.  *Id.*

In considering the documents at issue, we note that public interest in disclosure is minimal, apart from the general interest in maintaining open judicial proceedings.  Of course, the judicial proceedings here are also limited, as the parties only appear before us to compel private arbitration.  The documents are private commercial agreements between entities setting forth the terms of a private

8

business relationship. There does not appear to be a risk of embarrassment if the documents are disclosed, but neither does there appear to be an issue of fairness or efficiency between litigants, particularly because Everest, though opposing the sealing motions, already possesses the documents Penn National wants to seal.

Penn National, however, has a reasonably significant privacy interest in the reinsurance treaties. "[T]he interest in privacy is very important to the balancing test." *Zurich American Ins. Co.*, 345 F.Supp.2d at 503 (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994)). "The court should try to prevent 'the infliction of unnecessary or serious pain on parties.'" *Id.* (quoting *Pansy*, 23 F.3d at 787). Penn National argues that the treaties and correspondence contain "sensitive and proprietary information regarding the nature and structure of the parties' business relationship." (Doc. 25 at ¶ 22; Doc. 27 at ¶ 25). Penn National negotiates several reinsurance agreements with various reinsurance providers, each addressing a specific percentage of risk assumed at different layers. Because the various agreements are likely similar but not necessarily identical, disclosure of the precise terms of any one agreement could reasonably have a significant impact on Penn National's ability to negotiate other agreements with different reinsurers. We find that this privacy interest substantially outweighs the public's minimal interest in having access to these documents. Accordingly, we will grant Penn National's motions to seal.

## III.  CONCLUSION

Consistent with the above analysis, we will grant Penn National's Motion to Compel Arbitration, (Doc. 1), and motions to seal (Docs. 3, 24, 26, 40).  We fill further deny Everest's Motion to Compel Arbitration.  (Doc. 31).  We will enter a separate order in conformity with this memorandum.