## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Pennsylvania National Mutual Casualty Insurance Company, <br><br> Petitioner, <br><br> v. <br><br> Everest Reinsurance Company, <br><br> Respondent. | Case No.: 1:18-mc-00653-JEJ <br><br><br> **Consolidated Cases** |
| Everest Reinsurance Company, <br><br> Petitioner, <br><br> v. <br><br> Pennsylvania National Mutual Casualty Insurance Company, <br><br> Respondent. | Case No.: 1:18-mc-00656-JEJ |

## MEMORANDUM OF LAW IN SUPPORT OF EVEREST REINSURANCE COMPANY'S MOTION FOR A STAY PENDING APPEAL

On the Brief:
    Joseph J. Schiavone, Esq.
    Jeffrey S. Leonard, Esq.
    Marc E. Wolin, Esq.

Saiber LLC
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932
Tel. 973-622-3333
Fax 973-622-3349
Attorneys for Petitioner-Respondent
Everest Reinsurance Company

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. ii

PRELIMINARY STATEMENT ...........................................................1

QUESTION PRESENTED .................................................................3

FACTUAL AND PROCEDURAL HISTORY ......................................3

LEGAL ARGUMENT.......................................................................4

    I.    THE APPLICABLE LEGAL STANDARD .........................................4

    II.    THE COURT SHOULD GRANT A STAY PENDING APPEAL ......5

        a.    Everest Has a Reasonable Chance of Success on its Appeals....5

            i.    There is a Reasonable Chance that Everest Prevails on Its Appeal of the Order Granting Penn National's Petition and Denying Everest's Petition ...............................................5

            ii. There is a Reasonable Chance that Everest Prevails on Its Appeal of the Order Denying Its Motion to Unseal Judicial Documents that Bear Directly on the Petitions and the Consolidation Issue ....................................................9

        b.    Everest Will Be Irreparably Harmed If Forced to Proceed before a New Arbitration Panel while its Appeals are Pending....................................................................14

        c.    Penn National Will Not Be Substantially Injured By the Entry of a Stay Pending Appeal.................................................17

        d.    A Stay is in the Public Interest.................................................18

CONCLUSION ....................................................................20

CERTIFICATION OF COMPLIANCE WITH M.D.Pa. LOCAL RULE 7.8(b) ...22

# <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

<u>**Cases**</u>

<u>Aegis Sec. Ins. Co. v. Philadelphia Contributionship</u>,
   416 F. Supp. 2d 303 (M.D. Pa. 2005)..................................................................7, 8

<u>CAA Sports LLC v. Dogra</u>,
   No. 4:18-cv-1887, 2018 U.S. Dist. LEXIS 214223 (E.D. Mo. Dec.
   20, 2018) .............................................................................................................13

<u>Canterbury Liquors & Pantry v. Sullivan</u>,
   999 F. Supp. 144 (D. Mass. 1998).......................................................................6

<u>In re Cendant Corp.</u>,
   260 F.3d 183 (3d Cir. 2001) ...............................................................................10

<u>Century Indem. Co. v. AXA Belgium</u>,
   No. 11-cv-7263, 2012 U.S. Dist. LEXIS 136472
   (S.D.N.Y. Sept. 24, 2012)...................................................................................13

<u>Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.</u>,
   489 F.3d 580 (3rd Cir. 2007) ...........................................................................6, 7

<u>Church Ins. Co. v. Ace Prop. & Cas. Ins. Co.</u>,
   No. 10-cv-698, 2010 U.S. Dist. LEXIS 109774
   (S.D.N.Y. Sept. 22, 2010)...................................................................................13

<u>Clearwater Ins. Co. v. Granite State Ins. Co.</u>,
   No. 1:15-cv-165, slip op. (S.D.N.Y. Mar. 2, 2015)............................................13

<u>Connor v. Sedgwick Claims Mgmt. Servs., Inc.</u>,
   796 F. Supp. 2d 568 (D.N.J. 2011).....................................................................12

<u>Eagle Star Ins. Co. v. Arrowood Indem. Co.</u>,
   No. 13-cv-3410, 2013 U.S. Dist. LEXIS 135869
   (S.D.N.Y. Sept. 23, 2013)...................................................................................13

Global Reins. Corp. v. Argonaut Ins. Co.,
    No. 07-cv-8196, 2008 U.S. Dist. LEXIS 32419
    (S.D.N.Y. Apr. 18, 2008) ...................................................................... 13

Gruntal & Co. v. Steinberg,
    837 F. Supp. 85 (D.N.J. 1993) ..................................................... 14, 17

Hilton v. Braunskill,
    481 U.S. 770 (1987) ................................................................................ 5

Insight Equity AP X, LP v. Transitions Optical, Inc.,
    No. 10-cv-635, 2016 U.S. Dist. LEXIS 179525
    (D. Del. Dec. 29, 2016) .......................................................................... 11

Leucadia, Inc. v. Applied Extrusion Techs., Inc.,
    998 F.2d 157 (3d Cir. 1993) .................................................................... 9

Mazera v. Varsity Ford Servs., LLC,
    No. 07-cv-12970, 2008 U.S. Dist. LEXIS 42392
    (E.D. Mich. May 29, 2008) .............................................................. 15, 19

Nixon v. Warner Commc'ns, Inc.,
    435 U.S. 589 (1978) .............................................................................. 19

Nowak v. Pa. Prof'l Soccer, LLC,
    No. 12-cv-4165, 2015 U.S. Dist. LEXIS 163307
    (E.D. Pa. Dec. 3, 2015) .......................................................................... 13

PaineWebber Inc. v. Hartmann,
    921 F.2d 507 (3d Cir. 1990) .................................................................. 14

In re Peregrine Sys.,
    311 B.R. 679 (D. Del. 2004) .................................................................. 12

Redeemer Comm. of Highland Credit Strategies Funds v. Highland
    Capital Mgmt., L.P.,
    182 F. Supp. 3d 128, 133 (S.D.N.Y. 2016) .......................................... 12

Reilly v. City of Harrisburg,
    858 F.3d 173 (3d Cir. 2017) .................................................................. 17

Revel AC, Inc. v. IDEA Boardwalk, LLC,
  802 F.3d 558 (3d Cir. 2015) ........................................................................*passim*

Samsung Elecs. Co. v. Imperium IP Holdings (Cayman), Ltd.,
  No. 15-cv-1059, 2017 U.S. Dist. LEXIS 137678 (D. Del. Aug. 28,
  2017) ........................................................................................................11

Shaw's Supermarkets, Inc. v. United Food & Commercial Workers'
  Union,
  321 F.3d 251 (1st Cir. 2003)............................................................................7

Southwest Airlines Co. v. Transp. Workers Union of Am. AFL-CIO
  Local 555,
  No. 3:16-CV-3536, 2018 U.S. Dist. LEXIS 85414 (N.D. Tex. May
  22, 2018) ........................................................................................15, 18

Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,
  559 F.2d 841 (D.C. Cir. 1977)........................................................................6

Worth v. Worth,
  No. 16-cv-3877, 2016 U.S. Dist. LEXIS 177928 (E.D. Pa. Dec. 22,
  2016) ........................................................................................14, 18

XPO Intermodal, Inc. v. Am. President Lines, Ltd.,
  No. 17-cv-2015, 2017 U.S. Dist. LEXIS 176820 (D.D.C. Oct. 16,
  2017) ........................................................................................................13

Zavala v. Wal-Mart Corp.,
  No. 03-cv-5309, 2007 U.S. Dist. LEXIS 67282
  (D.N.J. Sept. 12, 2007) ...............................................................................11

**Statutes**

9 U.S.C. § 12 ............................................................................................16

## PRELIMINARY STATEMENT

Petitioner Everest Reinsurance Company ("Everest") respectfully submits this Memorandum of Law in support of its motion to stay pending appeal from this Court's March 14, 2019 Order to the extent it granted the Petition of Respondent Pennsylvania National Mutual Casualty Insurance Co. ("Penn National") to Compel Arbitration.

Penn National entered into a series of reinsurance agreements with Everest and other reinsurers. A dispute has arisen between Penn National and its reinsurers regarding reinsurance coverage for lead paint losses arising in the Baltimore, Maryland area (the "Lead Paint Losses"). Everest and Penn National disagree over whether language in the reinsurance agreements requiring that all reinsurers "act as one" in any dispute prohibits Penn National from commencing a second arbitration for its claims against Everest and requires that it proceed before an already-existing arbitration panel that has heard the same claims against other reinsurers.

Everest and Penn National both agree that the procedural question of how arbitration should proceed is an issue for arbitrators to decide. However, they disagree over whether this issue should be submitted to the already-formed arbitration panel or to a new, not-yet-constituted panel.

Unable to resolve this issue, the parties each petitioned this Court for relief. Everest's Petition sought an order compelling Penn National to continue its

arbitration before the existing arbitration panel convened to address the Lead Paint Losses (the "First Panel"). Penn National's Petition sought an order compelling Everest to proceed before a new, not-yet-constituted panel.

On March 14, 2019, the Court issued an Order granting Penn National's Petition, denying Everest's Petition, and granting several motions to seal filed by Penn National. At the same time, the Court denied Everest's motion to unseal documents filed in a related action. Everest has appealed from both Orders.

Everest now seeks a stay pending its appeal from that portion of the March 14, 2019 Order that granted Penn National's Petition and denied Everest's Petition in order to maintain the status quo and preserve the integrity of the arbitral process. The four-factor analysis that courts apply in this Circuit favors a stay.

First, Everest respectfully submits that it can make a sufficiently strong showing that it has a reasonable chance of success on its appeals from the denial of its Petition and the denial of its motion to unseal. Under the standard applicable in the Third Circuit, such a showing does not require Everest to convince this Court that its decision was wrong or that Everest has a "greater than 50%" chance of success. Rather, Everest must show that it has merely a reasonable and more than "negligible" chance of success. Given the uniform case law disfavoring the relief sought in Penn National's Petition and the substantial body of cases requiring the unsealing of exhibits to petitions to confirm arbitration awards, Everest's chance of

2

success rises far above "negligible."

Second, as to the harm in the absence of a stay, the Third Circuit recognizes that the harm of being forced to participate in arbitration proceedings that may become moot constitutes irreparable harm. The need for a stay here is particularly compelling because the Federal Arbitration Act ("FAA") limits a party's time to challenge an award, meaning that Everest could prevail on appeal but be left without a remedy to challenge an otherwise illegitimate award.

Third, in contrast to the very real harm posed to Everest in the absence of a stay, Penn National is not at risk of any substantial harm due to a stay.

Lastly, the public interest favors the issuance of a stay because sealing of documents in federal court is generally against the public interest.

## QUESTION PRESENTED

Should the Court stay its Order granting Penn National's Petition pending the appeal to the Court of Appeals from that Order and the Order denying Everest's motion to unseal? Yes.

## FACTUAL AND PROCEDURAL HISTORY

On March 14, 2019, the Court issued a Memorandum and Order granting Penn National's Petition to Compel Arbitration, denying Everest's Petition to Compel Existing Arbitration and Stay Subsequent Arbitration, and granting Penn

National's motions to seal. Exhs. A, B.[1] At that time, the Court also issued a Memorandum & Order denying Everest's Motion to Unseal the Judicial Documents that Penn National filed in a related action under Docket No. 1:18-mc-00278 (the "Confirmation Action"). Ex. C. Everest has appealed both Orders. In order to maintain the status quo, avoid the expenditure of substantial resources on arbitration proceedings that may be mooted, and avoid the potential mooting of the appeals, Everest respectfully requests that the Court stay its Order to the extent it granted Penn National's Petition to Compel Arbitration.

## **LEGAL ARGUMENT**

### I.    **THE APPLICABLE LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 62, a party appealing an order of a district court may seek to have that order stayed to maintain the status quo pending an appeal. Courts have traditionally considered four factors when determining whether to grant such a stay:

1. Whether the stay applicant has a reasonable chance of success on the merits;

2. Whether the applicant will be irreparably injured absent a stay;

3. Whether issuance of the stay will substantially injure the other parties interested in the proceeding; and

4. Whether a stay is in the public interest.

---

[1] Cited exhibits are included in the Table of Exhibits in support of Everest's motion for a stay.

4

Hilton v. Braunskill, 481 U.S. 770, 776 (1987). See also Revel AC, Inc. v. IDEA Boardwalk, LLC, 802 F.3d 558, 565 (3d Cir. 2015) (reversing a district court's denial of a request for a stay pending appeal). The first two of these factors "are the most critical." Revel AC, 802 F.3d at 570.

The factors are evaluated on a "sliding-scale approach," requiring the court to "balance them all" and weigh and measure each factor against the other factors. Id. at 568-69. Under this approach, a court should not apply the factors rigidly so as to deny relief merely because any one factor is lacking. Id. at 570 (rejecting the view that the analysis requires a stay applicant to "satisfy" all four factors). Here, the factors collectively weigh in favor of a stay.

## II.    THE COURT SHOULD GRANT A STAY PENDING APPEAL

### a.  Everest Has a Reasonable Chance of Success on its Appeals

> #### i.  *There is a Reasonable Chance that Everest Prevails on Its Appeal of the Order Granting Penn National's Petition and Denying Everest's Petition*

The first factor that courts consider in deciding whether to grant a stay is "whether the appellant has made a strong showing of the likelihood of success on the merits." Revel AC, 802 F.3d at 565. The Third Circuit has explained that "a sufficient degree of success for a strong showing exists if there is 'a reasonable chance, or probability, of winning.'" Id. at 568-69 (quoting Singer Mgmt. Consultants, Inc. v. Milgram, 650 F.3d 223, 229 (3d Cir. 2011) (en banc)). The

proponent of a stay must have more than a "negligible" chance of success on appeal. Id. at 569. However, the proponent need not show that the chance of success is "greater than 50%" or that it is "more likely than not" to prevail on the merits. Id. at 569, 571.

This is particularly true where a district court is asked to stay its own decision. Requiring an appealing party to show that it is "more likely than not" to prevail would preclude a trial court from ever entering a stay unless it believed its own decision was likely incorrect. Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 844-45 (D.C. Cir. 1977); Canterbury Liquors & Pantry v. Sullivan, 999 F. Supp. 144, 150 (D. Mass. 1998) ("[w]hen the request for a stay is made to a district court, common sense dictates that the moving party need not persuade the court that it is likely to be reversed on appeal. Rather, … the movant need only establish that the appeal raises serious and difficult questions of law in an area where the law is somewhat unclear.").

As the Court noted in its Memorandum issued in conjunction with the Order granting Penn National's Petition and denying Everest's Petition, the primary issue presented in this case is which arbitrators -- the First Panel or a yet-to-be-constituted panel -- should decide the issue of consolidation. Ex. A at 4. This Court correctly recognized that the Third Circuit in Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co., 489 F.3d 580 (3rd Cir. 2007), addressed "a

similar situation." Id. As this Court noted, <u>Westchester Fire</u> addressed the threshold question of whether the issue of consolidation of reinsurance claims involving multiple reinsurers under a series of treaties should be addressed by the arbitrators (as Everest and Penn National agree it should) or by the Court.

However, the Third Circuit in <u>Westchester Fire</u> also went on to analyze the critical issue here -- <u>which</u> arbitrators should decide the consolidation issue: the first-formed panel before which a consolidated arbitration would take place (as Everest argues) or a new, second panel to be constituted (as Penn National argues). 489 F.3d at 583-84, 588-90. The Third Circuit affirmed an order requiring that the issue of consolidation be directed to the first-formed panel before which the arbitration would proceed if consolidated, mirroring the relief requested by Everest. <u>Id.</u> at 588-90. The court specifically declined the request that new arbitration panels be formed to address whether claims should be consolidated before the first-formed arbitration panel, which is the relief Penn National seeks. <u>Id.</u> at 587-88.

Similar results were reached in the <u>Aegis</u> and <u>Shaw's Supermarkets</u> decisions cited by Everest, where the courts also held that the procedural issue of consolidation should be decided by an existing panel, before which a consolidated arbitration would proceed, not by a new panel. <u>Shaw's Supermarkets, Inc. v. United Food & Commercial Workers' Union</u>, 321 F.3d 251 (1st Cir. 2003); <u>Aegis</u>

Sec. Ins. Co. v. Philadelphia Contributionship, 416 F. Supp. 2d 303 (M.D. Pa. 2005). This result is much more orderly and efficient than requiring the parties to undertake the time and expense of convening a new panel to address a dispute over consolidation where that new panel may immediately become redundant if it decides that the case should be consolidated before the first-formed panel. See Aegis, 416 F. Supp. 2d at 310-11 (holding that the first-formed arbitration panel was the "best" panel to address consolidation because that would avoid the potential for wasted expense from selecting a second, possibly unnecessary panel).

In short, in all of the prior cases where courts considered which arbitrators should decide the consolidation issue, the courts held that the issue should go to the existing, first-formed panel before which the arbitration, if consolidated, would proceed. Penn National did not cite a single case to support its position that the Court should direct the parties to a new, second set of arbitrators to address whether the matter should be consolidated and continued before the First Panel.

The Court appears to have focused on the issue of which questions are for courts to decide and which are for arbitrators without considering the fact that courts uniformly direct consolidation questions to the first-formed panel. The Court seems to have assumed the correctness of Penn National's assertion that a second panel should be convened to address the consolidation issue rather than having that consolidation issue addressed by the first-formed panel, as all of the

relevant cases provide.

> ii. *There is a Reasonable Chance that Everest Prevails on Its Appeal of the Order Denying Its Motion to Unseal Judicial Documents that Bear Directly on the Petitions and the Consolidation Issue*

Everest also has a reasonable chance of prevailing on its appeal of the Order denying its motion to unseal judicial documents filed in the Confirmation Action. As explained below, that Order has a direct impact on Everest's ability to address threshold issues that will be presented to the arbitrators. Therefore, a stay should issue to permit the opportunity for meaningful review of the denial of Everest's public-right-of-access application before arbitration proceeds.

There is a strong "presumption of public access" to documents filed with the court. Leucadia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 161 (3d Cir. 1993). A recent article in the National Law Review reported on the Court's denial of Everest's motion to unseal, noting that it is at odds with the body of contemporary case law applying this presumption to deny the sealing of documents filed with the court as part of applications to confirm or vacate arbitral awards. See Larry P. Schiffer, Private Interest Outweighs Public Interest in Sealing of Arbitration Documents, NATIONAL LAW REVIEW (Mar. 18, 2019), https://www.natlawreview.com/article/private-interest-outweighs-public-interest-

sealing-arbitration-documents.[2]

In this Circuit, the presumption of public access can be overcome only by a showing that "disclosure will work a clearly defined and serious injury to the party seeking closure." In re Cendant Corp., 260 F.3d 183, 194 (3d Cir. 2001). That injury must be shown with "specificity." Id. As Everest pointed out in its March 13, 2019 reply brief, Penn National failed to provide any evidence to support its generalized and speculative claim of potential injury.

To justify continued sealing, Penn National relied on conclusory assertions and did not provide any specificity or support for its claim of potential harm. Penn National did not provide any evidentiary support showing that disclosure of any terms of its agreements would impact its negotiations with reinsurers or cause it to suffer any specific "clearly defined and serious injury."

That Penn National was unable to present such evidence is no surprise given that the agreements at issue are between 23 and 28 years old, such that it is highly

---

[2]The author of the National Law Review article, Larry P. Schiffer of Squire Patton Boggs, is a credible and well-known lawyer in the area of insurance and reinsurance. He has been practicing in that field for more than 35 years and is the editor of ARIAS Quarterly, a publication of the AIDA Reinsurance and Insurance Arbitration Society that tracks news and developments relating to insurance and reinsurance arbitrations. See https://www.squirepattonboggs.com/en/professionals/s/schiffer-larry-p (last visited Apr. 16, 2019); Professional Profiles: Larry P. Schiffer, INT'L RISK MGMT. INST. (Aug. 2017), https://www.irmi.com/articles/expert-commentary/professional-profiles-larry-p-schiffer (last visited Apr. 16, 2019); https://www.arias-us.org/quarterly-editorial-board/ (last visited Apr. 16, 2019); https://www.arias-us.org/about-arias-us/ (last visited Apr. 16, 2019).

doubtful that disclosure would impede Penn National's ability to negotiate other agreements with different reinsurers. See Insight Equity AP X, LP v. Transitions Optical, Inc., No. 10-cv-635, 2016 U.S. Dist. LEXIS 179525, *4-5 (D. Del. Dec. 29, 2016) (explaining that the age of information weighs against sealing); Zavala v. Wal-Mart Corp., No. 03-cv-5309, 2007 U.S. Dist. LEXIS 67282, *27 (D.N.J. Sept. 12, 2007) (declining to seal proprietary data dating back more than three years because "release of such stale information is unlikely to harm any 'future negotiations'"). The National Law Review article that reported on this case emphasized the dubious nature of Penn National's assertion of a need for sealing decades-old agreements, explaining that "[i]f these treaties were recent, the privacy interest might make more sense, but these treaties are from the early to mid-1990s and treaty wording and pricing has changed since then." Schiffer, NATIONAL LAW REVIEW, supra.

In any case, the possibility, however doubtful, that certain terms from those old agreements might affect the negotiation of reinsurance agreements today cannot justify the wholesale sealing of the entire agreements and of all arbitration information, including the arbitration award that was at the center of the Confirmation Action (the "Award"). See Samsung Elecs. Co. v. Imperium IP Holdings (Cayman), Ltd., No. 15-cv-1059, 2017 U.S. Dist. LEXIS 137678, *7 (D. Del. Aug. 28, 2017) (explaining that a "document is not sealed in its entirety

simply because it contains trade secrets or confidential information" and that specific information must be redacted "as narrow[ly] as possible"); <u>Connor v. Sedgwick Claims Mgmt. Servs., Inc.</u>, 796 F. Supp. 2d 568, 592 (D.N.J. 2011) (denying a motion to seal documents in their entirety and ordering the movant to file publicly accessible redacted versions of the documents); <u>In re Peregrine Sys.</u>, 311 B.R. 679, 691 (D. Del. 2004) (reversing a bankruptcy court's denial of a motion to intervene and unseal a report because, once the motion to unseal was made, the court was required to order the parties to submit a redacted copy of the report addressing the specific portions that should remain sealed); <u>see also</u> FED. R. CIV. P. 5.2(d) (providing for courts to order a party that filed a document under seal to file a redacted version for the public record).

As to documents other than the decades-old agreements, Penn National's only argument was that disclosure "would defeat the expectation of confidentiality surrounding arbitrations and … thus discourage alternative dispute resolution …" Ex. D at 2, 7. Underscoring the fact that Everest's chances of prevailing are significant, innumerable decisions have rejected the argument that privacy interests alone in arbitration can overcome the public right of access to documents filed with petitions to confirm arbitration awards. <u>See, e.g.</u>, <u>Redeemer Comm. of Highland Credit Strategies Funds v. Highland Capital Mgmt., L.P.</u>, 182 F. Supp. 3d 128, 133 (S.D.N.Y. 2016) (unsealing all documents that accompanied a petition to confirm

an award because "[a] party to an arbitration proceeding that is subject to confirmation proceedings in a federal court cannot have a legitimate expectation of privacy in all papers pertaining to the arbitration because the party should know of the presumption of public access to judicial proceedings"); CAA Sports LLC v. Dogra, No. 4:18-cv-1887, 2018 U.S. Dist. LEXIS 214223 (E.D. Mo. Dec. 20, 2018) (refusing to seal exhibits to a petition to vacate an arbitration award); XPO Intermodal, Inc. v. Am. President Lines, Ltd., No. 17-cv-2015, 2017 U.S. Dist. LEXIS 176820 (D.D.C. Oct. 16, 2017) (refusing to seal arbitration award attached as an exhibit to a petition to confirm the award); Nowak v. Pa. Prof'l Soccer, LLC, No. 12-cv-4165, 2015 U.S. Dist. LEXIS 163307 (E.D. Pa. Dec. 3, 2015) (same); Clearwater Ins. Co. v. Granite State Ins. Co., No. 1:15-cv-165, slip op. at 2-3 (S.D.N.Y. Mar. 2, 2015) (unsealing documents from a reinsurance arbitration filed as part of a petition to confirm the award); Eagle Star Ins. Co. v. Arrowood Indem. Co., No. 13-cv-3410, 2013 U.S. Dist. LEXIS 135869 (S.D.N.Y. Sept. 23, 2013) (same); Century Indem. Co. v. AXA Belgium, No. 11-cv-7263, 2012 U.S. Dist. LEXIS 136472 (S.D.N.Y. Sept. 24, 2012) (same); Church Ins. Co. v. Ace Prop. & Cas. Ins. Co., No. 10-cv-698, 2010 U.S. Dist. LEXIS 109774 (S.D.N.Y. Sept. 22, 2010) (same); Global Reins. Corp. v. Argonaut Ins. Co., No. 07-cv-8196, 2008 U.S. Dist. LEXIS 32419 (S.D.N.Y. Apr. 18, 2008) (same).

In light of the great weight of relevant authority disfavoring sealing and

13

recognizing that public access is in the public interest, Everest has a reasonable, if not greater than 50%, chance of succeeding on the appeal of the Order denying its motion to unseal.

### b. Everest Will Be Irreparably Harmed If Forced to Proceed before a New Arbitration Panel while its Appeals are Pending

The second factor that Courts consider is the extent to which a stay applicant is "likely" to be "irreparably injured absent a stay." Revel AC, 802 F.3d at 569. "Irreparable harm" is that which "'cannot be prevented or fully rectified' by a successful appeal." Id. at 568. The harm need not be certain before a court may grant relief. Id. at 569.

Courts have held that compelled participation in arbitration proceedings that may potentially be rendered moot constitutes irreparable harm. See PaineWebber Inc. v. Hartmann, 921 F.2d 507, 515 (3d Cir. 1990) (holding that "harm to a party would be per se irreparable" if that party were forced to proceed with arbitration proceedings during litigation over the propriety of those proceedings), overruled on other grounds by Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002); Gruntal & Co. v. Steinberg, 837 F. Supp. 85, 93 (D.N.J. 1993) (same); Worth v. Worth, No. 16-cv-3877, 2016 U.S. Dist. LEXIS 177928, *9 (E.D. Pa. Dec. 22, 2016) ("[p]articipation in an arbitration proceeding which may be rendered moot is an irreparable injury that federal courts have recognized when considering motions

14

to stay arbitration"); <u>Southwest Airlines Co. v. Transp. Workers Union of Am.</u> <u>AFL-CIO Local 555</u>, No. 3:16-CV-3536, 2018 U.S. Dist. LEXIS 85414, *6-7 (N.D. Tex. May 22, 2018) (recognizing the irreparable harm that a party would suffer if forced to move forward with arbitration before a new arbitrator when an appeal "could effectively moot any such proceedings"); <u>Mazera v. Varsity Ford</u> <u>Servs., LLC</u>, No. 07-cv-12970, 2008 U.S. Dist. LEXIS 42392, *5 (E.D. Mich. May 29, 2008) (finding that the irreparable-harm factor supports the issuance of a stay where "the outcome of the arbitration proceeding may be mooted depending upon the decision on appeal"). That is precisely what would happen here.

Further, without a stay, Everest would be required to proceed with the arbitration before a new, second panel of arbitrators while its appeal challenging the propriety of that panel is pending. Those arbitration proceedings would involve significant expense to Everest that would be completely wasted if the proceedings are rendered moot as the result of a successful appeal. The loss that Everest would suffer by having to participate in potentially moot arbitration proceedings would be irreparable because Everest would have no means by which to remedy that harm. There is no basis in tort, contract, or statute for Everest to recover the substantial fees and expenses that will unquestionably be incurred if it is forced to select a new panel and arbitrate before that panel while the appeal is pending.

In addition, the denial of a stay could undermine Everest's right to appellate

review in its entirety. Under the FAA, a party seeking to challenge an arbitration award, including on the basis of the arbitrators exceeding their power, must do so within three months of that award. 9 U.S.C. § 12. If Everest were forced to proceed before a new panel of arbitrators that is ultimately held by a successful appeal not to have had authority to hear the parties' dispute, Everest might be unable to challenge any award that was issued by that new panel more than three months prior to the Third Circuit's decision.

Finally, absent a stay, Everest will not have the opportunity to meaningfully respond to the self-serving characterizations about the Award and the reinsurance contracts that Penn National cites in support of its argument on the threshold issue of consolidation and on Everest's right to the record from the earlier proceedings before the First Panel. For instance, Penn National's demand for a new set of arbitrators is based on its argument that the claims against Everest do not involve the "same dispute" as the claims addressed by the First Panel and that the First Panel is "defunct." These arguments necessarily turn on the contents of the First Panel's Award -- an award that has been concealed. This is a point that Penn National concedes. See Ex. E at ¶ 11 (wherein Penn admitted that the parties' Petitions "will necessarily require some confidential Arbitration Information relating to the prior arbitration [proceedings to] be presented to the Court in this matter").

The loss of the opportunity to offer arguments on these threshold issues based on judicial documents subject to the public right of access harms Everest. The Court should stay its Order compelling Everest to arbitrate before a new panel until there is an opportunity for review of the Order that denied Everest access to the very documents needed to address key threshold issues.

### c. Penn National Will Not Be Substantially Injured By the Entry of a Stay Pending Appeal

Next, courts consider the likelihood of irreparable harm to the opposing party if a stay is granted and weigh that harm against the likely harm to the stay applicant. Revel AC, 802 F.3d at 569. The basic purpose of this balancing "is to ensure that the issuance of an injunction would not harm the [appellee] more than a denial would harm the [appellant]." Gruntal, 837 F. Supp. at 93.

While the risk of harm to Everest is real, substantial, and not subject to redress, there is no substantial risk of irreparable harm to Penn National. To the contrary, the only harm that Penn National could claim is potential economic loss relating to the delay of receipt of money that it hopes to ultimately recover through arbitration. Any such harm (i) is entirely speculative and dependent on Penn National ultimately prevailing in arbitration, and (ii) could be remedied in its entirety by an award of pre-judgment interest. Thus, in contrast to Everest, Penn National cannot cite any substantial, irreparable harm that weighs against the issuance of a stay. See Reilly v. City of Harrisburg, 858 F.3d 173, 179 n.4 (3d Cir.

17

2017) (noting that "the availability of money damages for an injury typically will preclude a finding of irreparable harm").

### d. A Stay is in the Public Interest

The last of the relevant factors is the extent to which the public interest favors or disfavors the issuance of a stay. This factor is not determinative simply because the public interest in a matter is not great or even weighs against the grant of a stay. See Revel AC, 802 F.3d at 570, 573 (noting that no one factor will determine the outcome of a stay analysis and granting a stay even though the public interest tilted slightly in favor of the denial of a stay); Worth, 2016 U.S. Dist. LEXIS 177928 at *9-10 (issuing a stay notwithstanding a lack of public interest).

First, the FAA itself represents the embodiment of Congress's recognition that there is a strong public interest in maintaining arbitration as a cost-effective alternative to litigation. The courts have recognized that the public's interest in cost-effective arbitration supports the issuance of a stay that allows the parties to avoid the expense of potentially mooted arbitration proceedings while an appeal is pending. See Southwest Airlines, 2018 U.S. Dist. LEXIS 85414 at *8 (granting a stay pending appeal of an order compelling a party to continue arbitration proceedings before a new arbitrator because "the public interest will be served by a swift determination from the [Court of Appeals] and by preserving the parties'

valuable resources in the interim"); <u>Mazera</u>, 2008 U.S. Dist. LEXIS 42392 at *5 (granting a stay pending appeal of an order compelling arbitration where arbitration proceedings could be mooted by the appeal and noting that "[t]he public interest is best served by expedient litigation that does not unnecessarily exhaust resources").

Second, Everest's appeals, which may be mooted if an arbitration proceeds, raise an important public question, because the public has a strong interest in the correct application of the public right of access. <u>See</u> <u>Nixon v. Warner Commc'ns, Inc.</u>, 435 U.S. 589, 597 (1978) (discussing the strong public interest in the right of access to judicial documents). The Court, therefore, should issue a stay maintaining the status quo while the appeals are pending.

For instance, the Court's decision denying Everest's motion to unseal could be said to cut back on the public right of access. Although Penn National had the burden of showing that it would suffer an injury if sealed documents were disclosed, it did not provide any support for its position on this point. The Court's decision has the effect of allowing a party to a contract to maintain the confidentiality of all documents filed with the Court simply by asserting that disclosure would affect its ability to negotiate with others. The public has a substantial interest in having this decision weighed against Third Circuit precedent, which may not occur if the proceedings before the arbitrators are resolved before a

decision on the appeals is issued.

This case has been recognized by the National Law Review and commentators as "significant" and "noteworthy" for the issues that are raised both by the Petitions and by Everest's motion to unseal. Schiffer, NATIONAL LAW REVIEW, supra; Alex B. Silverman, District Court Declines to Decide Procedural Arbitrability Issue, Separately Seals Docket, Finding "Reasonably Significant Privacy Interest" in Reinsurance Treaties," NATIONAL LAW REVIEW (Mar. 27, 2019), https://www.natlawreview.com/article/district-court-declines-to-decide-procedural-arbitrability-issue-separately-seals; White & Williams LLP, PA District Court Holds Newly Formed Arbitration Panel Should Decide Consolidation Dispute, JD SUPRA (Apr. 2, 2019), http://www.jdsupra.com/legalnews/pa-district-court-holds-newly-formed-47746. As noted above, the National Law Review highlighted the Court's decision as a departure from the body of case law holding that a party's interest in sealing arbitral documents filed with the court must yield to the public's right of access to those documents. Schiffer, NATIONAL LAW REVIEW, supra. A stay should be issued so that the important legal issues raised by the appeals can be addressed.

## **CONCLUSION**

For the foregoing reasons, Everest respectfully requests that this Court grant a stay pending appeal of that portion of this Court's March 14, 2019 Order that

granted Penn National's Petition to Compel Arbitration.

Dated: April 18, 2019

Respectfully submitted,

SAIBER LLC


By:   /s/ *Joseph J. Schiavone*
     Joseph J. Schiavone (NJ 012761989)
     jschiavone@saiber.com
     (Admitted pro hac vice)

     Jeffrey S. Leonard   (NJ 031161993)
     jleonard@saiber.com
     (Admitted pro hac vice)

     Marc E. Wolin        (PA 65437)
     mwolin@saiber.com

     18 Columbia Turnpike, Suite 200
     Florham Park, New Jersey 07932
     Tel. 973-622-3333
     Fax 973-622-3349
     Attorneys for Petitioner-Respondent
     Everest Reinsurance Company

1380106.DOCX

21

## CERTIFICATION OF COMPLIANCE WITH M.D.Pa. LOCAL RULE 7.8(b)

I, Joseph J. Schiavone, hereby certify as follows:

1.      Pursuant to Local Rule 7.8(b)(2) for the United States District Court for the Middle District of Pennsylvania, this brief complies with the word count-limitation of M.D.Pa. Local Rule 7.8(b)(2) because this brief contains 4,801 words (including body of the brief and footnotes, but excluding the cover, tables, and signature block) in a proportionally spaced typeface (Times New Roman) 14-point size. This calculation sum was provided by the Microsoft Word processing system word count function.

I certify under penalty of perjury that the foregoing is true and correct. Executed on April 18, 2019.

   /s/ *Joseph J. Schiavone*
   JOSEPH J. SCHIAVONE