# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Pennsylvania National Mutual Casualty Insurance Company,<br><br>  Petitioner,<br><br>v.<br><br>Everest Reinsurance Company,<br><br>  Respondent. | Case No.: 1:18-mc-00653-JEJ<br><br><br>**Consolidated Cases** |
| Everest Reinsurance Company,<br><br>  Petitioner,<br><br>v.<br><br>Pennsylvania National Mutual Casualty Insurance Company,<br><br>  Respondent. | Case No.: 1:18-mc-00656-JEJ |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF EVEREST REINSURANCE COMPANY'S MOTION FOR A STAY PENDING APPEAL

On the Brief:
  Joseph J. Schiavone, Esq.
  Jeffrey S. Leonard, Esq.
  Marc E. Wolin, Esq.

Saiber LLC
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932
Tel. 973-622-3333
Fax 973-622-3349
Attorneys for Petitioner-Respondent
Everest Reinsurance Company

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................... ii

PRELIMINARY STATEMENT ...................................................................1

LEGAL ARGUMENT ...................................................................................3

    A.    Penn National Fails to Challenge the Authority Demonstrating Everest's Reasonable Chance of Success on Appeal ............................3

    B.    The Irreparable Harm That Everest Would Suffer Favors the Issuance of a Stay ...................................................................................8

        1)    Compelled Participation in Potentially Moot Arbitration Proceedings and the Cost Associated with Such Proceedings Constitute Irreparable Harm ........................................................8

        2)    The Arguments That Penn National Makes Based on Stateside Are Unavailing .........................................................11

        3)    Penn National Concedes That Everest Would Be Entitled to a Stay to Prevent Its Appeal from Being Mooted ........................13

        4)    The Loss of the Opportunity to Rely on the Judicial Documents That Are the Subject of Everest's Appeal Constitutes Irreparable Harm ...................................................13

    C.    Penn National Has Not Made Any Showing of a Substantial Injury That It Would Suffer from a Stay Pending Appeal.............................15

    D.    The Public Interest in This Case Favors the Issuance of a Stay .........15

CONCLUSION .............................................................................................17

CERTIFICATION OF COMPLIANCE WITH M.D.Pa. LOCAL RULE 7.8(b) ...19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>Aegis Sec. Ins. Co. v. Philadelphia Contributionship</u>,
  416 F. Supp. 2d 303 (M.D. Pa. 2005)............................................................4, 5

<u>Blair v. Scott Specialty Gases</u>,
  283 F.2d 595 (3d Cir. 2002) ...............................................................................11

<u>Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.</u>,
  489 F.3d 580 (3rd Cir. 2007) ................................................................................4

<u>Cup v. Ampco-Pittsburgh Corp.</u>,
  No. 17-2349 (3d Cir. Sept. 5, 2017) ............................................................*passim*

<u>Cup v. Ampco-Pittsburgh Corp.</u>,
  No. 17-cv-0189, 2017 U.S. Dist. LEXIS 122589 (W.D. Pa. Aug. 3,
  2017) ........................................................................................................*passim*

<u>Deon v. Barasch</u>,
  No. 1:17-cv-1454, 2018 U.S. Dist. LEXIS 209055 (M.D. Pa. Dec.
  12, 2018) .............................................................................................................4, 5

<u>Fireman's Fund Ins. Co. v. Cunningham Lindsey Claims Mgmt., Inc.</u>,
  No. 03-CV-0531, 2005 U.S. Dist. LEXIS 32116 (E.D.N.Y. June
  28, 2005) ...............................................................................................................16

<u>Graphics Communications Union, Local No. 2 v. Chicago Tribune Co.</u>,
  779 F.2d 13 (7th Cir. 1985) .................................................................................10

<u>LG Elecs., Inc. v. Wi-LAN USA, Inc.</u>,
  No. 13-cv-2237, 2015 U.S. Dist. LEXIS 98873 (S.D.N.Y. July 29,
  2015) ......................................................................................................................16

<u>Mazera v. Varsity Ford Servs., LLC</u>,
  No. 07-cv-12970, 2008 U.S. Dist. LEXIS 42392 (E.D. Mich. May
  29, 2008) ..........................................................................................................13, 16

<u>Perera v. Siegel Trading Co.</u>,
  951 F.2d 780 (7th Cir. 1992) ...............................................................................12

Reilly v. City of Harrisburg,
   858 F.3d 173 (3d Cir. 2017) ...............................................................15

Revel AC, Inc. v. IDEA Boardwalk, LLC,
   802 F.3d 558 (3d Cir. 2015) ....................................................7, 8, 11

Shaw's Supermarkets, Inc. v. United Food & Commercial Workers'
   Union,
   321 F.3d 251 (1st Cir. 2003)..................................................................4

Southwest Airlines Co. v. Transp. Workers Union of Am. AFL-CIO
   Local 555,
   No. 3:16-CV-3536, 2018 U.S. Dist. LEXIS 85414 (N.D. Tex. May
   22, 2018) ......................................................................................12, 16

Stateside Machinery Co., Ltd. v. Alperin,
   526 F.2d 480 (3d Cir. 1975) ............................................................11, 12

Worth v. Worth,
   No. 16-cv-3877, 2016 U.S. Dist. LEXIS 177928 (E.D. Pa. Dec. 22,
   2016) .............................................................................................10, 12

**Statutes**

9 U.S.C. § 16 .............................................................................................12

9 U.S.C. § 1292(a)(1)...........................................................................11, 12

**Other Authorities**

John Y. Gotanda, The Emerging Standards for Issuing Appellate
   Stays, 45 BAYLOR L. REV. 809 (1993)..................................................9

Local Rule 7.8(b) .....................................................................................19

## PRELIMINARY STATEMENT

Penn National offers various arguments as to why each of the factors of the stay analysis weighs against the issuance of a stay. None has merit.

First, Penn National avoids directly confronting Everest's showing that it has a reasonable chance of success on appeal. Penn National does not cite a single case supporting the relief sought in its Petition, nor is it able to distinguish the case law that uniformly favors the relief sought in Everest's Petition. Penn National also does not attempt to address the National Law Review article discussing the fact that the denial of Everest's motion to unseal conflicts with the body of case law unsealing documents filed as part of applications to confirm or vacate arbitral awards. The best Penn National can muster is to argue that the Court should find in its favor because "Everest merely repeats the same arguments" previously presented to the Court and because Everest "fails to articulate that the Court's relevant decision amounts to an error of law or fact." Penn National's Brief in Opposition, dated May 1, 2019, ("Opp. Br.") at 6-7. Penn National's arguments are without legal or factual merit.

Second, with respect to irreparable injury, Penn National does not dispute that, in the absence of a stay, Everest would be forced to expend substantial sums on potentially moot arbitration proceedings. Instead, it argues that this does not qualify as irreparable harm. Penn National's position conflicts with Third Circuit law. Penn National is also forced to concede that a stay may ultimately be required to avoid the

mooting of Everest's appeal. It takes the illogical position that Everest should be force to spend significant time and money on potentially moot arbitration proceedings before applying for that stay. This, too, has no merit.

Third, Penn National makes no showing whatsoever of any harm that it would suffer if a stay is issued.

Lastly, Penn National's argument that the general public policy favoring arbitration disfavors the issuance of a stay in cases involving arbitration has been repeatedly rejected by courts.

Throughout its opposition brief, Penn National argues that this court should be guided by Cup v. Ampco-Pittsburgh Corporation. Cup v. Ampco-Pittsburgh Corp., No. 17-cv-0189, 2017 U.S. Dist. LEXIS 122589 (W.D. Pa. Aug. 3, 2017) (district court decision denying stay pending appeal); Cup v. Ampco-Pittsburgh Corp., No. 17-2349 (3d Cir. Sept. 5, 2017) (Third Circuit order granting stay pending appeal).[1] Everest agrees. The non-moving party in Cup made the same arguments that Penn National does here -- (i) that a stay should not be granted where the moving party repeats its arguments on the merits, (ii) that economic loss cannot be irreparable harm, (iii) that the non-"self-executing" nature of arbitration awards precludes a finding of irreparable harm, and (iv) that a stay of arbitration proceedings

---

[1]Unpublished Authorities are included in the Table of Authorities filed with this reply brief or in the Table of Authorities filed with Everest's moving brief (Case No. 1:18-mc-00653, Doc. No. 58-1).

runs counter to the public interest. In <u>Cup</u>, those arguments were premised on the same, distinguishable opinions that Penn National cites here. The Third Circuit <u>granted</u> the motion for a stay of an order compelling arbitration pending appeal of that order. This Court should do the same.

## **LEGAL ARGUMENT**

### A.   **Penn National Fails to Challenge the Authority Demonstrating Everest's Reasonable Chance of Success on Appeal**

As an initial matter, it should be noted that Penn National's brief in opposition to the motion for a stay mischaracterizes the real issue presented by the parties' competing petitions.  Penn National previously acknowledged that the issue was "to whom the Court should direct the parties to proceed with resolving the dispute" over consolidation. Case No. 1:18-mc-00656, Doc. No. 11 at 1. Penn National now claims that the parties' competing petitions concern "how the arbitration panel should be constituted" rather than which panel -- the existing panel or Penn National's proposed panel -- should decide consolidation. Opp. Br. at 2, 7. Penn National's mischaracterization ignores the fact that an arbitration panel has already been appointed and that its Petition seeks to force the appointment of a second panel.

As to Everest's appeal on the issue of which set of arbitrators should rule on consolidation, Penn National still has not cited a single case to support its position that a second set of arbitrators should be appointed to decide that issue. Penn National makes the unsupported and erroneous claim that "there does not appear to

exist a court decision that compelled or suggested a different result." Opp. Br. at 7. This assertion ignores the case law that uniformly runs in Everest's favor. See Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co., 489 F.3d 580 (3rd Cir. 2007); Shaw's Supermarkets, Inc. v. United Food & Commercial Workers' Union, 321 F.3d 251 (1st Cir. 2003); Aegis Sec. Ins. Co. v. Philadelphia Contributionship, 416 F. Supp. 2d 303 (M.D. Pa. 2005). Penn National offers no argument as to why Westchester Fire, Aegis, and Shaw's Supermarkets -- holding that the first-formed panel considers the issue of consolidation -- are inapplicable here.

Rather than confront Everest's showing of a reasonable chance of success head on, Penn National asserts baseless arguments concerning the form of that showing. Penn National relies on the unpublished district court decision in Deon to claim that a party moving for a stay cannot demonstrate a likelihood of success merely "by reiterating its arguments made at earlier stages of the litigation." Opp. Br. at 6 (citing Deon v. Barasch, No. 1:17-cv-1454, 2018 U.S. Dist. LEXIS 209055 (M.D. Pa. Dec. 12, 2018)).

This principle that Penn National concocts cannot be squared either with Third Circuit law or the facts of this case. In one of the very cases upon which Penn National relies, the Third Circuit granted a stay pending appeal even though, as the district court noted, the movants addressed their likelihood of success by "largely

repeat[ing] the arguments made in their prior filings." Cup v. Ampco-Pittsburgh Corp., No. 17-cv-0189, 2017 U.S. Dist. LEXIS 122589, *3 (W.D. Pa. Aug. 3, 2017); Cup v. Ampco-Pittsburgh Corp., No. 17-2349 (3d Cir. Sept. 5, 2017) (order granting stay pending appeal).

Everest's showing of a likelihood of success goes far beyond what was presented in Deon. The court in Deon ruled that the stay applicant failed to demonstrate a likelihood of success because it relied on a "[m]ere repetition of arguments previously considered and rejected" and because it "simply argue[ed] that the Court of Appeals may disagree with this court's interpretation of the applicable law without pointing to any clear errors or erroneous findings by this court." 2018 U.S. Dist. LEXIS 209055 at *5-6 (citing Cottillion v. United Ref. Co., No. 09-cv-140E, 2014 U.S. Dist. LEXIS 177243 (W.D. Pa. Dec. 23, 2014)).

Here, by contrast, Everest identified an issue that, rather than being "considered and rejected," was apparently overlooked by the Court. As Everest pointed out in its moving papers (Everest Moving Br. at 8-9), it appears that the Court did not analyze the aspect of the relevant case law that uniformly holds that consolidation questions should be directed to the first-formed panel before which the arbitration, if consolidated, would proceed.[2] The Court's decision concerning the

---

[2]This body of case law includes Aegis Sec. Ins. Co. v. Philadelphia Contributionship, 416 F. Supp. 2d 303 (M.D. Pa. 2005), which was decided by Judge Rambo, who issued the unpublished Deon opinion upon which Penn National relies.

parties' competing petitions appears to assume the correctness of Penn National's position that a second set of arbitrators should be appointed to consider the issue of consolidation. Thus, Penn National is plainly incorrect when it claims that Everest "fails to articulate that the Court's relevant decision amounts to an error of law or fact." Opp. Br. at 7.

Similarly, Everest did not merely state that the Third Circuit may disagree with the Court's decision on Everest's motion to unseal. Rather, Everest cited a National Law Review article explaining that the denial of Everest's motion to unseal is at odds with the body of contemporary case law that refuses to seal documents filed with the court as part of applications to confirm or vacate arbitral awards. See Larry P. Schiffer, Private Interest Outweighs Public Interest in Sealing of Arbitration Documents, NATIONAL LAW REVIEW (Mar. 18, 2019), https://www.natlawreview.com/article/private-interest-outweighs-public-interest-sealing-arbitration-documents.

Penn National attempts to dismiss the aspect of the interrelated, consolidated appeals that concerns Everest's motion to unseal as "largely irrelevant" because Everest did not seek to stay the order denying that motion. Opp. Br. at 7-8 n.3. There was no reason for Everest to seek a stay of that order, just as there was no reason for Everest to seek a stay of that aspect of the Court's order that denied its Petition to compel Penn National to proceed with the existing arbitration. The fact that there

was nothing to stay with respect to that order does not mean there is no reason to consider how all aspects of the interrelated, consolidated appeals bear on the issuance of a stay.

Penn National's effort to downplay the aspect of the appeals that concerns the sealing of judicial documents undoubtedly stems from the fact that the National Law Review article allows Everest to easily show a chance of success that is greater than "negligible." See Revel AC, Inc. v. IDEA Boardwalk, LLC, 802 F.3d 558, 569 (3d Cir. 2015) (proponent of a stay must have more than a "negligible" chance of success on appeal). Penn National cites no support for its suggestion that this admittedly "related" aspect of the pending appeals is "irrelevant" to the question of whether Everest has shown a likelihood of success for its appeal merely because, as a procedural matter, it arose under a different docket number. Indeed, Penn National itself admitted that at least some of the sealed documents relating to the prior proceedings before the First Panel would have to be disclosed for the Court to rule on its Petition. See, e.g., Ex. E at ¶ 11.[3]

---

[3]Exhibit E is included in the Table of Exhibits submitted in support of Everest's Motion for a Stay Pending Appeal (Case No. 1:18-mc-00653, Doc. No. 57-2).

**B.    The Irreparable Harm That Everest Would Suffer Favors the Issuance of a Stay**

   *1) Compelled Participation in Potentially Moot Arbitration Proceedings and the Cost Associated with Such Proceedings Constitute Irreparable Harm*

Penn National does not dispute that Everest would incur significant costs to go forward with arbitration proceedings while its appeal is pending, nor does it dispute that those proceedings could be entirely mooted by the pending appeals. Instead, it argues that the significant economic harm that would result from wasted expense on mooted proceedings does not qualify as irreparable harm. This argument is without legal merit under Third Circuit law.

Throughout its recent opinion in Revel, the Third Circuit cited to a law review article that defined irreparable harm, which the article describes as the most "misunderstood" of the four stay factors. As the article succinctly states:

> Until recently, there had been some confusion over whether economic loss could constitute irreparable harm. In light of the principle that "mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough," several courts have ruled that economic loss could not constitute irreparable harm in and of itself. Such a rule, however, is entirely too sweeping and broad. Fortunately, this view appears to have been correctly rejected by the majority of courts.
>
> There are situations where economic loss unquestionably constitutes "irreparable harm," such as where the monetary loss is nonrecoverable. In determining whether the claimed injury is irreparable, the focus of the inquiry should not be on whether the injury is economic in nature, but whether the harm suffered during the course of the litigation could be fully rectified by the court's final decision. If the movant could not

> be made whole if he or she ultimately prevailed, then the harm suffered
> - whether or not it is economic in nature - is in fact "irreparable."

John Y. Gotanda, The Emerging Standards for Issuing Appellate Stays, 45 BAYLOR

L. REV. 809, 815-16 (1993) ("Gotanda Article") (citing, inter alia, Hoxworth v.

Blinder Robinson & Co., 903 F.2d 186 (3d Cir. 1990) and United Steelworkers v.

Fort Pitt Steel Casting, 598 F.2d 1273 (3d Cir. 1979)).[4] The economic loss that

Everest would suffer if successful on appeal unquestionably qualifies as irreparable

harm favoring a stay.

To support its argument that the expense of arbitration can never be

irreparable injury, Penn National brazenly tells this Court to follow a district court

decision denying a stay, and to ignore the fact that the Third Circuit subsequently

granted a stay in that very same case. Opp. Br. at 11-12 (citing Cup, 2017 U.S. Dist.

LEXIS 122589). Meaningful examination of Cup demonstrates the untenable nature

of Penn National's position.

The stay applicants in Cup made the exact same assertions that Everest makes

here: that they would suffer irreparable injury by being required to proceed in an

arbitration which may be rendered moot by the appeal or which may itself moot the

appeal and that the expense of arbitration would be wholly unnecessary if they were

_____

[4]John Y. Gotanda is a widely cited expert on international arbitration who has served
as an arbitrator and Dean of Villanova Law and is presently President of Hawai'i
Pacific University. https://www.hpu.edu/faculty/john-y-gotanda.html.

successful on appeal. Ex. F at 4, 12; Ex. G at 7-8.[5] The non-moving party made the very same arguments as Penn National to oppose the stay and, like Penn National, cited Graphics Communications, a Seventh Circuit decision that departs from the traditional stay analysis to apply a nearly per se bar for the "whole class of requests" to stay orders compelling arbitration. Ex. H at 16-19; Graphics Communications Union, Local No. 2 v. Chicago Tribune Co., 779 F.2d 13, 14 (7th Cir. 1985). The Third Circuit in Cup rejected those arguments and granted a stay pending appeal. Cup v. Ampco-Pittsburgh Corp., No. 17-2349 (3d Cir. Sept. 5, 2017) (order granting stay pending appeal). See also Worth v. Worth, No. 16-cv-3877, 2016 U.S. Dist. LEXIS 177928, *9 (E.D. Pa. Dec. 22, 2016) (refusing to follow Graphics Communications regarding irreparable harm because "[p]articipation in an arbitration proceeding which may be rendered moot is an irreparable injury that federal courts have recognized when considering motions to stay arbitration").

Penn National speculates that, in granting the stay in Cup, the Third Circuit "probably viewed the stay applicants as having a very strong likelihood of success on the merits." Opp. Br. at 11 n.5. There is no basis for such speculation in the Third Circuit's summary order (Cup, No. 17-2349 (3d Cir. Sept. 5, 2017) (order granting stay pending appeal)), and the appeal on the merits was before a panel of judges different than the panel that granted the stay motion. Further, the very fact that the

---

[5] Exhibits F–H are included in the Table of Exhibits submitted with this reply brief.

Third Circuit granted a stay in <u>Cup</u> necessarily means that it accepted the movant's argument that potential mootness and the expense of arbitration constituted irreparable harm. <u>See</u> <u>Revel</u>, 802 F.3d at 571 (noting that a showing of irreparable harm is required for a stay). That is the very same argument that Everest makes here. In short, <u>Cup</u> undermines, rather than supports, Penn National's argument that potential mootness and arbitration expenses do not constitute irreparable harm.

2) *The Arguments That Penn National Makes Based on <u>Stateside</u> Are Unavailing*

Penn National also cites <u>Stateside Machinery Co., Ltd. v. Alperin</u>, 526 F.2d 480 (3d Cir. 1975), to attempt to draw an artificial distinction between the instant matter and those cited in Everest's moving brief and to argue that the "self-executing" nature of arbitration awards precludes the finding of irreparable harm for purposes of a stay. Opp. Br. at 9-10. <u>Stateside</u> did not involve an application for a stay pending appeal, and, instead, addressed the issue of jurisdiction over an interlocutory appeal under the exceptions of 9 U.S.C. § 1292(a)(1). <u>Id.</u> at 481, 484 (dismissing the appeal for want of appellate jurisdiction); <u>see also</u> <u>id.</u> at 483 (noting that the court may have reached a different decision if the case involved a suit to compel arbitration). The decision is no longer good law. <u>See</u> <u>Blair v. Scott Specialty Gases</u>, 283 F.2d 595, 600 (3d Cir. 2002) (explaining that the "continued viability of the holding and rationale" of case law concerning appeals from orders pertaining to arbitration "must be examined in light of the Supreme Court's recent decision in

11

Green Tree"); 9 U.S.C. § 16; <u>Perera v. Siegel Trading Co.</u>, 951 F.2d 780, 782 (7th Cir. 1992) ("Section 16 modifies much of the pre-1988 law regarding the appealability of district court orders pertaining to arbitration").

The decades-old decision in <u>Stateside</u> concerned not just a wholly different issue but also a wholly different set of facts. Addressing appealability under 9 U.S.C. § 1292(a)(1), the court noted that the parties did not dispute the procedure for arbitration, that at least some of the claims at issue would need to be arbitrated in accordance with that procedure, and that the party resisting arbitration had previously sought relief from a different court based on representations that arbitration was moving forward. <u>Id.</u> at 481, 484. Thus, unlike the matter at hand, the arbitration in <u>Stateside</u> did not threaten to waste significant time and expense on proceedings that would potentially be mooted by a finding that proposed arbitration proceedings were at odds with the parties' agreement.

Here, as well, the Third Circuit's actions in <u>Cup</u> are instructive. The arguments that Penn National makes based upon <u>Stateside</u> were made by the party opposing a stay in <u>Cup</u> (<u>see</u> Ex. H at 14-16) and were subsequently rejected by the Third Circuit. <u>Cup v. Ampco-Pittsburgh Corp.</u>, No. 17-2349 (3d Cir. Sept. 5, 2017). Other recent decisions show that courts grant stays pending appeal, rather than compelling parties to undertake the expense of mooted arbitration proceedings. <u>See</u> <u>Worth</u>, 2016 U.S. Dist. LEXIS 177928, *9; <u>Southwest Airlines Co. v. Transp.</u>

Workers Union of Am. AFL-CIO Local 555, No. 3:16-CV-3536, 2018 U.S. Dist. LEXIS 85414, *6-7 (N.D. Tex. May 22, 2018); Mazera v. Varsity Ford Servs., LLC, No. 07-cv-12970, 2008 U.S. Dist. LEXIS 42392, *5 (E.D. Mich. May 29, 2008).

3) *Penn National Concedes That Everest Would Be Entitled to a Stay to Prevent Its Appeal from Being Mooted*

Everest would also suffer irreparable harm by the issuance of an award that could moot its appeal. Here, Penn National is forced to concede that Everest would eventually be entitled to a stay to prevent the mooting of its appeal. Opp. Br. at 10. This provides yet another basis for a stay. See Gotanda Article at 823 (explaining that the stay analysis "should achieve the purpose of preserving the [appellate] court's power to render a meaningful decision on the merits").

Penn National argues that, because an arbitration award is not "self-executing," Everest will at some later date have the opportunity to seek a stay of proceedings to confirm an award issued. Opp. Br. at 10. Yet, it does not offer any explanation as to why, if Everest can seek a stay later, it should first be forced to spend substantial sums of unrecoverable money on potentially moot proceedings.

4) *The Loss of the Opportunity to Rely on the Judicial Documents That Are the Subject of Everest's Appeal Constitutes Irreparable Harm*

Penn National's argument that Everest could seek a stay after the issuance of an award also ignores the harm that Everest would suffer from the loss of the opportunity to rely on judicial documents to address the threshold issues (including

13

consolidation) that will be presented to the arbitrators. Penn National sets up a straw man by claiming that Everest's motion to unseal seeks "evidence" and that Everest's position "presupposes that the issue on appeal in the related action concerns the relevance of the sealed documents in the arbitration with Penn National." Opp. Br. at 13. Penn National offers speculation about what the arbitrators "could" decide as to the relevance of such documents. However, Everest has not argued that it is entitled to the documents simply because of their "relevance" as evidence for the ultimate merits of the claims to be addressed in arbitration.

Penn National itself has already conceded that the judicial documents at issue are not only relevant to the claims that will need to be addressed by the arbitrators but also that they form the foundation for the positions it takes on threshold issues, including consolidation. See, e.g., Ex. E at ¶ 11 (wherein Penn National admitted that the threshold issues "will necessarily require some confidential Arbitration Information relating to the prior arbitration [proceedings to] be presented to the Court in this matter"). Everest's right to access judicial documents exists regardless of its right to use the documents in the ultimate arbitration on the merits. That right can only be addressed by the Court. The loss of the opportunity to rely on those judicial documents to respond to the self-serving characterizations that Penn National makes on threshold issues would cause Everest irreparable harm.

**C.    Penn National Has Not Made Any Showing of a Substantial Injury That It Would Suffer from a Stay Pending Appeal**

Penn National states that it will be "substantially injured if the arbitration is further delayed," but it cites nothing to support that assertion. Opp. Br. at 13-14. Instead, it argues only that the pending appeals could delay resolution of this matter. Id. This is always the case with, and indeed the very purpose of, a stay pending appeal. Critically, Penn National does not identify how such delay would cause it "substantial injury," nor does it dispute that any such delay could be entirely remedied by an award of pre-judgment interest. See Reilly v. City of Harrisburg, 858 F.3d 173, 179 n.4 (3d Cir. 2017) (noting that "the availability of money damages for an injury typically will preclude a finding of irreparable harm"). Penn National's failure to make a showing of any substantial injury favors the issuance of a stay.

**D.    The Public Interest in This Case Favors the Issuance of a Stay**

Penn National argues that the public interest weighs in its favor based upon the general public policy favoring arbitration. However, arbitration is still a creature of contract, and, therefore, if the parties never agreed to the appointment of a second set of arbitrators, as the mandatory consolidation clause indicates, then no public interest is served by Penn National's effort to force Everest to proceed before a new arbitration panel.

Penn National attempts to summarily dismiss as "non-persuasive" the case law that addresses circumstances where, as here, there was a risk of duplicative

proceedings and that holds that the public interest in preserving arbitration as a cost-effective means of dispute resolution favors the issuance of a stay. See Southwest Airlines, 2018 U.S. Dist. LEXIS 85414 at *8 (granting a stay pending appeal because "the public interest will be served by a swift determination from the [Court of Appeals] and by preserving the parties' valuable resources in the interim"); Mazera, 2008 U.S. Dist. LEXIS 42392 at *5 (granting a stay pending appeal because "[t]he public interest is best served by expedient litigation that does not unnecessarily exhaust resources").

Penn National calls on the court to disregard this case law in favor of plainly distinguishable decisions. Opp. Br. at 14 (citing LG Elecs., Inc. v. Wi-LAN USA, Inc., No. 13-cv-2237, 2015 U.S. Dist. LEXIS 98873 (S.D.N.Y. July 29, 2015); Fireman's Fund Ins. Co. v. Cunningham Lindsey Claims Mgmt., Inc., No. 03-CV-0531, 2005 U.S. Dist. LEXIS 32116 (E.D.N.Y. June 28, 2005)). These cases are inapposite. Fireman's Fund did not involve any type of motion for a stay or any injunction analysis (Opp. Br., Ex. E), and LG Electronics found that the public interest factor disfavored a stay only because, unlike here, there was no risk of "duplicative proceedings" (id., Ex. D).

Once again, the Cup case conclusively shows that this factor also favors Everest. Like Penn National, the party opposing the stay in Cup cited LG Electronics and Graphic Communications to argue that the general policy favoring arbitration

16

weighs against a stay in any case involving arbitration. Ex. H at 16, 22. Finding those arguments unpersuasive, the Third Circuit issued a stay pending appeal of an order compelling arbitration. Cup, No. 17-2349 (3d Cir. Sept. 5, 2017).

Finally, Penn National makes no attempt to dispute the fact that the public interest favoring a stay is reflected by the articles recognizing the "significant" and "noteworthy" issues raised both by the petitions and by Everest's motion to unseal. Schiffer, NATIONAL LAW REVIEW, supra; Alex B. Silverman, District Court Declines to Decide Procedural Arbitrability Issue, Separately Seals Docket, Finding "Reasonably Significant Privacy Interest" in Reinsurance Treaties," NATIONAL LAW REVIEW (Mar. 27, 2019), https://www.natlawreview.com/article/district-court-declines-to-decide-procedural-arbitrability-issue-separately-seals; White & Williams LLP, PA District Court Holds Newly Formed Arbitration Panel Should Decide Consolidation Dispute, JD SUPRA (Apr. 2, 2019), http://www.jdsupra.com/legalnews/pa-district-court-holds-newly-formed-47746. The public interest in this case favors the issuance of a stay.[6]

## **CONCLUSION**

For the foregoing reasons, Everest respectfully requests that this Court grant a stay pending appeal of that portion of this Court's March 14, 2019 Order that

---

[6]The cited articles are included in the Table of Authorities filed with Everest's moving brief (Case No. 1:18-mc-00653, Doc. No. 58-1).

granted Penn National's Petition to Compel Arbitration.

Dated: May 14, 2019

Respectfully submitted,

SAIBER LLC

By:    /s/ *Joseph J. Schiavone*

Joseph J. Schiavone (NJ 012761989)
jschiavone@saiber.com
(Admitted pro hac vice)

Jeffrey S. Leonard    (NJ 031161993)
jleonard@saiber.com
(Admitted pro hac vice)

Marc E. Wolin        (PA 65437)
mwolin@saiber.com

18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932
Tel. 973-622-3333
Fax 973-622-3349
Attorneys for Petitioner-Respondent
Everest Reinsurance Company

1386683.DOCX

## CERTIFICATION OF COMPLIANCE WITH M.D.Pa. LOCAL RULE 7.8(b)

I, Joseph J. Schiavone, hereby certify as follows:

1.      Pursuant to Local Rule 7.8(b)(2) for the United States District Court for the Middle District of Pennsylvania, this brief complies with the word count-limitation of M.D.Pa. Local Rule 7.8(b)(2) because this brief contains 4,237 words (including body of the brief and footnotes, but excluding the cover, tables, and signature block) in a proportionally spaced typeface (Times New Roman) 14-point size. This calculation sum was provided by the Microsoft Word processing system word count function.

I certify under penalty of perjury that the foregoing is true and correct. Executed on May 14, 2019.

   /s/ *Joseph J. Schiavone*   
JOSEPH J. SCHIAVONE