# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, | : : : | 1:18-mc-653 |
| Petitioner, | : : | Hon. John E. Jones III |
| v. | : : | |
| EVEREST REINSURANCE COMPANY, | : : | |
| Respondent. | : | |

_____

| | | |
|---|---|---|
| EVEREST REINSURANCE COMPANY, | : : | |
| Petitioner, | : : | |
| v. | : : | |
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, | : : : | |
| Respondent. | : | |

## **ORDER**

## **May 22, 2019**

Presently pending before the Court is Everest Reinsurance Company's ("Everest") Motion to Stay Order Pending Appeal. (Doc. 57). On March 14, 2019, we issued an Order deciding competing motions to compel arbitration filed by Everest and Pennsylvania National Mutual Casualty Insurance Company ("Penn National"), in which we granted Penn National's motion and denied Everest's

1

motion. (Doc. 53). In that same Order, we granted several motions to seal documents filed by Penn National. In addition, we entered an Order in a related case in which we denied Everest's motions to intervene and to unseal documents. (*See* Civ. Docket No. 1:18-mc-278, Doc. 28). Everest has appealed both Orders and seeks to stay arbitration pending its appeals.

When determining whether to grant a motion to stay pending appeal, we consider four factors: "(1) whether the appellant has made a strong showing of the likelihood of success on the merits; (2) will the appellant suffer irreparable injury absent a stay; (3) would a stay substantially harm other parties with an interest in the litigation; and (4) whether a stay is in the public interest." *In re Revel AC, Inc.*, 802 F.3d 558, 565 (3d Cir. 2015). The first two factors "are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

The case law surrounding the first factor is somewhat amorphous. The Third Circuit has noted that "while it 'is not enough that the chance of success on the merits be better than negligible,' the likelihood of winning on appeal need not be 'more likely than not.'" *In re Revel AC*, 802 F.3d at 569 (quoting *Nken*, 556 U.S. at 434; *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011)). Everest argues that it meets this threshold because our decisions run contrary to established case law. In particular, with respect to our granting of Penn National's motion to compel, Everest cites to *Certain Underwriters at Lloyd's*

*London v. Westchester Fire Ins. Co.*, 489 F.3d 580 (3d Cir. 2007); *Shaw's Supermarkets, Inc. v. United Food & Commercial Workers' Union*, 321 F.3d 251 (1st Cir. 2003); and *Aegis Sec. Ins. Co. v. Philadelphia Contributorship*, 416 F.Supp.2d 303 (M.D. Pa. 2005).  None of these cases, however, demonstrates an error in our reasoning.  In *Certain Underwriters*, Westchester Fire issued two arbitration demands, each of which grouped similar reinsurance contracts.  489 F.3d at 582.  Certain Underwriters countered that each reinsurance contract should have a separate arbitration.  *Id.* at 583.  The Court determined that consolidation was a question for the arbitrators and ordered the parties to proceed according to the original demand, which happened to be consolidated.  *Id.* at 590.  Likewise, in *Shaw's Supermarkets*, the Union requested consolidated arbitration of three separate contracts, which Shaw's opposed.  321 F.3d at 252.  The First Circuit also determined that consolidation was an issue for the arbitrators to decide and compelled arbitration according to the original demand, which also happened to be a consolidated proceeding.  *Id.* at 255.  Finally, in *Aegis*, an arbitration was already underway when the court ordered Contributorship, who had requested a separate arbitration proceeding, to be incorporated into the ongoing arbitration while the arbitrators determined if consolidation was appropriate.  416 F.Supp.2d at 310-11.

  Everest suggests that these cases show that the question of consolidation should go to the "first" panel.  Thus, because Penn National had previously

3

arbitrated its claims with New England Reinsurance Corporation and Hartford Fire Insurance Company in the related action (which Everest believes it should have been part of), then case law guides us toward sending the question of consolidation to that "first" panel rather than ordering a new panel. Everest's reading does not square with the cases, though. There was no "first" panel in either *Certain Underwriters* or *Shaw's*, and in *Aegis*, the "first" panel was an arbitration still in process. In *Certain Underwriters* and *Shaw's*, the Court ordered the parties to proceed with arbitration according to the *original demand*. In *Aegis*, the Court rationally concluded that ordering Contributorship into an existing arbitration made more sense than creating a new panel. None of those cases contemplates a scenario in which an arbitration panel concludes an arbitration, and a court confirms its award, only to have a party demand to have that panel decide an issue of consolidation. We correctly noted that the issue of consolidation is for arbitrators to decide, and our order granting Penn National's motion reverts to the *original demand*, which Penn National issued. We therefore see no error and, on the matter of the motion to compel, no likelihood of success.

Our orders granting Penn National's motions to seal and denying Everest's motion to unseal, however, were likely erroneous. A recent opinion of the Third Circuit clarifies the distinction between the standard to protect discovery materials under Rule 26(c) of the Federal Rules of Civil Procedure and the standard

underpinning the common law right of public access. *See In re Avandia Marketing, Sales Practices and Products Liability Litigation*, 2019 WL 2119630 (3d Cir. May 15, 2019). The public right to access judicial records creates a presumption of disclosure of documents, which, while not absolute, is nevertheless quite strong. *Id.* at *4. A Rule 26(c) protective order requires a less stringent balancing test between public and private interests according to several factors set forth by the Third Circuit. *Id.* at *3. In the portions of our Orders related to sealing documents, we acknowledged the presumption of public access, but we primarily applied the less rigorous Rule 26(c) standard. Although the factors "may provide useful guidance for courts conducting the balancing required by the common law test . . . [they] do not displace the common law right of access standard . . . [and] are not sufficiently robust for assessing the public's right to access judicial records." *Id.* at *7. Our decision, therefore, likely did not give sufficient weight to the public's right to access the documents in question. We therefore find that Everest has a significant likelihood of success in appealing our sealing decisions.

The second factor considers the irreparable harm that Everest would suffer if we do not issue a stay. Everest argues that, absent a stay, they would be forced to incur expenses in proceeding before a new arbitration panel that may be rendered moot on appeal. Generally, "[m]ere litigation expense, even substantial and

unrecoupable cost, does not constitute irreparable injury." *Renegotiation Bd. V. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974).  This principle is particularly apt here, where Everest agrees that the ultimate dispute is within the scope of its arbitration agreement.  Thus, Everest expects to be before arbitrators and will incur arbitration expenses regardless of the outcome of the appeal.[1]  However, the issue of consolidation is narrow and, presumably, one that could be determined by an arbitration panel before the Third Circuit decides the appeal.  Thus, there is significant risk that Everest would be required to litigate the consolidation issue before an arbitration panel, only to have the Third Circuit reverse our decision and force Everest to re-litigate the exact same issue before a different panel.  We do not find this kind of forced inefficiency to be a "mere litigation expense."  Thus, we find that Everest would be irreparably harmed absent a stay.

"Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest." *In re Revel AC*, 802 F.3d at 569 (quoting *Niken*, 566 U.S. at 435).  Penn National argues that it will be harmed by further delay of arbitration but primarily bases its argument on the fact that both parties understand they will be in arbitration over this dispute.  Thus, Penn National refers to a stay as "unnecessary"

---

[1] This contrasts cases in which the Third Circuit found irreparable harm where a dispute arguably outside the scope of an arbitration clause was compelled to arbitration.  *See, e.g., PaineWebber Inc. v. Hartmann*, 921 F.2d 507 (3d Cir. 1990) *overruled on other grounds by Howsam v. Dean Witter Reynolds*, 537 U.S. 79 (2002).

and "only serv[ing] to prolong the inevitable (and agreed upon) arbitration between the Parties." (Doc. 61 at 17). We find Penn National's argument insufficient. Although Penn National surely wants to proceed to arbitration as expeditiously as possible, there is good reason to delay until the Third Circuit can conclude which panel should decide the consolidation question. A stay staves off potentially duplicate proceedings on the same issue, while not appearing to work any additional harm on Penn National. Finally, on the matter of public interest, we note that while public policy favors arbitration, denying a stay would introduce potential inefficiencies to the arbitration process that would make a mockery of the very design of arbitration. We do not honor the strong federal policy in favor of arbitration by setting the stage for potentially redundant and wasteful proceedings on narrow procedural issues still on appeal.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. Everest Reinsurance Company's Motion to Stay Order Pending Appeal, (Doc. 57), is **GRANTED.**

s/ John E. Jones III<br>
John E. Jones III<br>
United States District Court